Argued May 1, affirmed June 27, 1951

# STATE OF OREGON *v.* MOORE
### 233 P. 2d 253

*Glenn R. Jack,* of Oregon City, argued the cause for appellant. With him on the briefs was James O. Goodwin, of Oregon City.

*Courtney R. Johns,*[*] Deputy District Attorney, of Albany, argued the cause for respondent. With him on the brief was Melvin Goode,[†] District Attorney, of Albany.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and WARNER, Justices.

WARNER, J.

On March 8, 1946, the defendant, Roy Moore, was convicted in Linn county, Oregon, for the crime of burglary and the crime of larceny, and on the 12th day of March, 1946, was sentenced to imprisonment in the Oregon state penitentiary without limitation of time for a maximum of five years on the first count and for a maximum of ten years on the second count, said sentences to run concurrently. We affirmed that conviction on defendant's appeal in *State v. Moore,* 180 Or. 502, 176 P. 2d 631, 177 P. 2d 413, whereupon he filed a petition in the Supreme Court of the United States for a writ of certiorari, which was denied on October 13, 1947 (332 U.S. 763, 92 L.ed. 349, 68 S.Ct.

[*] District attorney at time of argument.
[†] District attorney at time brief submitted.

68). A mandate on the judgment in this court was thereafter filed in the circuit court of Linn county on November 8, 1947.

Shortly after, the defendant Moore surrendered himself to the warden of the state penitentiary. The State in its brief claims that defendant's incarceration began on November 12, 1947. We are unable to find in the record anything which supports that particular date as the date of the beginning of defendant's sentence. We are, however, able to say with certainty that the date was between November 8 and November 30 of that year. On January 8, 1949, the then governor of the state of Oregon commuted the terms of defendant's imprisonment to "one (1) year, eight (8) months, and twenty-four (24) days." The defendant was released from the state penitentiary on the same day. Thereafter, on January 22, 1949, the district attorney of Linn county filed an information under § 26-2804, O.C.L.A., charging the defendant with being a habitual criminal in that, previous to his last conviction on March 8, 1946, in Linn county, Oregon, he had been convicted of three other felonies: the crimes of burglary and burglary not in a dwelling house, both in Baker county, Oregon, in 1940; and the crime of burglary in the state of Wyoming in 1911.

The defendant, upon being duly arraigned upon the charge in the information, pleaded not guilty and thereafter, pursuant to the defendant's request and with his consent, a trial was had before the court without a jury. After hearing the evidence and entering findings establishing the identity of the defendant and his previous convictions for felonies as specified in the information, the court thereupon vacated the sentence of ten years imposed upon the defendant

on the 12th day of March, 1946, and sentenced him for the term of his natural life. From the judgment of life sentence the defendant has appealed. He alleges but two errors, which we will consider in the order of their presentation.

■ The defendant first argues that this proceeding is tantamount to placing him twice in jeopardy for the same offense. Notwithstanding that we have previously held, and again reiterate, that the plea of former jeopardy has no application to a habitual criminal proceeding, since being a habitual criminal is not an offense but merely a status *(State v. Durham,* 177 Or. 574, 582, 164 P. 2d 448, 162 A.L.R. 422), we think it but fair that we avail ourselves of the opportunity to clarify this disputed point in terms of the facts shown by the record.

■ Defendant premises this proposition upon the claim that he had completely served the term of the sentence of his last conviction at the time the information under the habitual Criminal Act (§§ 26-2801 through 26-2804, O.C.L.A.) was filed. It is his contention that January 8, 1949, marks the last day of his sentence as commuted. We cannot join in that conclusion.

Defendant has elected to rest his claim upon the bald and unsupported assertion that his sentence was terminated coincident with the date of his commutation, but fails to supply us with any computation explaining how he fixes the terminal date of his sentence.

Unfortunately, there is nothing in the record to establish the precise day in November, 1947, when the defendant Moore began his last sentence in the state penitentiary. We are able to say, however, that it was some time between the 8th and the 30th of November,

1947. If, for example, we arbitrarily take November 12, as contended for by the State, the defendant had served one year, one month and twenty-seven days of his original sentence as of the date that his sentence was commuted by the governor to "one (1) year, eight (8) months, and twenty-four (24) days." Taking any day in November, 1947, after the 8th day of that month, it is readily ascertainable that as of January 22, 1949, the date of the filing of the information under the Habitual Criminal Act, the defendant still had approximately six months to serve on his sentence as commuted by the governor on January 8 of that year. If we were at liberty to give the defendant the full amount of credit to which he might have been entitled under § 23-1413, O.C.L.A., for every month or fraction thereof that he served between the date of his prison entry and the date upon which his sentence was commuted, he would still have approximately two months to serve after January 8, 1949. Our computation of time accords with the finding of the lower court that when the instant proceeding was commenced, the defendant had not completed service of his sentence as commuted. We are satisfied that there is no merit in defendant's first claim of error.

Defendant's second contention is that the court erred in overruling the demurrer to the information for the reason that it was not filed within two years after defendant's last conviction. The weakness of this assertion is evidenced by the fact that he relies solely upon that part of § 4 of ch. 585, Oregon Laws, 1947, reading: "* * * that such information shall be filed within two years after the last conviction." To do this he must necessarily ignore, as he does, the impact of § 7 of the same Act, which should be read with it.

Section 8 of ch. 585, Oregon Laws, 1947, repeals in its entirety the Habitual Criminal Act as it was prior to that year (§§ 26-2801 through 26-2804, O.C.L.A.). The Act of 1947 substitutes a new code therefor which, among other things, introduces for the first time provisions of limitation of time for the invocation of certain procedures, including that referred to by defendant as a part of § 4.

Section 7 of the Act of 1947 is a saving clause reading: "All provisions of law repealed by this act hereby are continued in full force and effect as to *penalties incurred* and pending proceedings." (Italics ours.)

■ Such saving provisions are declarative of a continuing policy of the state that the repeal of any statute shall not release or extinguish any liability incurred or affect any right accrued. 50 Am. Jur., Statutes, 534, § 527. When the repealing statute contains a saving clause as to crimes committed prior to the repeal, or as to pending prosecutions, the offender may be tried and punished under the old law. 50 Am. Jur., Statutes, 571, § 572.

If we disregard the saving provisions of § 7, defendant's point would be well taken because it is obvious that more than two years had elapsed between the date of his last conviction and the filing of the instant information. On the other hand, if the saving clause is applicable in this matter, then his contention is without merit.

No information under the old act (§§ 26-2801 through 26-2804, O.C.L.A.) had been filed against defendant prior to the enactment of ch. 585, Oregon Laws 1947, and to that extent it may be said that there

were no "pending proceedings" affected by § 7. This elimination focuses our attention on the words "penalties incurred," as found in that section; and if it can be said that the defendant had "incurred penalties" under the previous Act prior to its repeal, then ipso facto his status here is to be determined by the language of the Habitual Criminal Act as it was prior to 1947. The earlier law provided no limitation of time in which to file an information alleging habitual criminality. This innovation, as we have said, appears for the first time in the Act of 1947.

To avoid the effect of the saving clause in the Act of 1947, the defendant argues that "penalties incurred" mean "penalties imposed or exacted." He thus uses the words in a past tense, meaning the completed assessment of penalties so as to preclude any further action with reference thereto and tells us further that they are penalties arising out of cases where the court has previously determined that a person was a habitual criminal. We are not so persuaded. The defendant also represents that any other interpretation would leave the provisions of the former statute in force forever as to offenders who, prior to the enactment of the law of 1947, were liable to the further penalties provided by the law as it existed before that time. In that representation we concur.

Section 23-106, O.C.L.A., relieves us from applying the common law rule of strict construction to penal statutes and substitutes instead the duty to construe them "according to the fair import of their terms, with a view to effect its objects and to promote justice." A search for the fair import comprehends a reasonable and sensible construction. *Swift & Company et al. v. Peterson* (June 6, 1951).

■ In construing penal statutes the legislative intent in most instances is to be found by giving words the meaning in which they are used in ordinary speech. *Varley v. Consolidated Timber Co.*, 172 Or. 157, 166, 139 P. 2d 584; *Kirk v. Farmers' Union Grain Agency et al.*, 103 Or. 43, 47, 202 P. 731.

The verb "incur," as defined by Webster's New International Dictionary, means "to become liable or subject to" and is illustrated with the phrase "to *incur* \* \* \* penalty." Funk & Wagnalls New Standard Dictionary defines "incur," in the legal sense, as "To bring upon oneself indirectly by some act." These definitions comport with the definitions as found in reported cases. See *Schwab et al. v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 382, 198 S.W. 2d 79, 168 A.L.R. 1074, where the word "incur," as found in a penal statute, is defined as "brought on," "occasioned" or "caused;" and *United States v. Distillery at Spring Valley*, 25 Fed. Cas. 854, 858, where the phrase "shall incur the forfeitures" is said to mean that the offender subjects himself to forfeiture and causes or brings on a forfeiture.

When we speak of a person as having "incurred a penalty," we ordinarily imply the existence of two things: (1) the present or past commission of some overt act amenable to the penal laws; and (2) the probability that, by reason of such act, he will at some future time be subjected to the penalties of that law. In short, to have "incurred penalties" implies a time past or present as to the act and a future time as to the assessment of the penalty.

■ In our opinion, the incurrence of a penalty comprehended by the words "penalties incurred," as used in § 7 of ch. 585, Oregon Laws, 1947, implies the crea-

tion of a status of liability to respond to a penalty which will be imposed at a future date, a status which continues until terminated by the imposition of the penalty incurred.

■■ When we turn to the Habitual Criminal Act as it was prior to its repeal in 1947, we find that the construction which we give to the words "penalties incurred" has a special pertinency and fitness when applied to the facts of the instant matter. The defendant was convicted of his fourth felony on March 8, 1946, and on the 12th day of that month was sentenced to five years on the first count and ten years on the second count. By that last conviction he had, in terms of Webster, "become liable or subject to" § 26-2803, O.C.L.A., providing for a compulsory life sentence, whenever the matter was brought before the court by the information required by § 26-2804, O.C.L.A. It will be observed that the section just cited says: "If at any time, either after sentence or conviction, it shall appear that a person convicted of a felony has previously been convicted," an information *shall be* filed setting forth the convictions and, upon proof of the averments, the increased penalty exacted by §§ 26-2801 through 26-2803 shall be imposed. See *Macomber v. State et al.,* 181 Or. 208, 220, 180 P. 2d 793. Therefore, at any time after March 8, 1946, the date of his conviction, or at any time after March 12, 1946, the date of his sentence on the felony charges, his status was as one who had incurred penalties, i.e., the possibility of having his sentence of March 12 vacated under § 26-2804, and the sentence to life imprisonment imposed in lieu thereof and at any time thereafter without limitation.

We held in *State v. Durham*, supra, 177 Or. 578, that:

"The act [the Habitual Criminal Act] provides for a separate and supplementary proceeding in order to enable the court to determine the kind and character of man upon whom sentence is to be imposed. It is a continuation of the original prosecution."

Indeed, it might well be said that once a fourth felony conviction is had, a party from that date is potentially a habitual criminal, and that such inchoate status continues to and until his prior convictions become known to the authorities and an information is filed under § 26-2804, O.C.L.A., and is followed by a determination that the defendant is in fact the same person charged by that information. It is then, and only then, that such a person is no longer answerable to further charge under the Act. It is that action under that section which transmutes "penalties incurred" into "penalties imposed or exacted"; and until that action is taken, the right and power to initiate it is continued under the saving provision of § 7 of the Act of 1947.

■■ There is yet another persuasive reason why we cannot accept defendant's definition of the words "penalties incurred," meaning, as he says, "penalties imposed or exacted" and necessarily connoting something previously completed or an event consummated. His is a meaning which accents things that have passed. The fallacy of defendant's definition becomes readily manifest when we consider the function of a saving clause such as is § 7 of the Act of 1947. A statutory "saving clause" is to save, that is, to preserve the status quo of something existent at the time of its enactment. In 2 Sutherland, Statutory Construction (3d ed.) 376, § 4830, it is said: "* * * the

saving clause is said to preserve from destruction certain rights, remedies or privileges which would otherwise be destroyed by the general enactment." Also see 59 C.J., Statutes, 1093, § 644. Its accent is upon things or conditions existent or which may be pending, not upon that which has happened. It is, therefore, apparent that if we employ the meaning which defendant assigns to the words "penalties incurred" as they appear in § 7, we place the legislature in the impossible position of having attempted "to save" something nonexistent, past, dead and gone, thereby rendering that section meaningless and innocuous so far as the words "penalties incurred" are concerned.

We cannot concur in defendant's tortured construction of § 7 and find that from March 8, 1946, the date of the defendant's fourth felony conviction, he was continuously liable to a sentence of life imprisonment under the provisions of the Habitual Criminal Act as it was prior to 1947 and that he was in nowise exonerated therefrom by any provision of ch. 585, Oregon Laws, 1947. We further hold that such status prevailed up to and including his sentence as a habitual criminal on April 25, 1950.

The lower court is, therefore, affirmed.