Argued March 17, affirmed April 15, 1953

# STATE OF OREGON *v.* SMITH

255 P. 2d 1076

*James K. Gardner,* Deputy District Attorney for Washington County, argued the cause for appellant. With him on the brief was G. Russell Morgan, District Attorney for Washington County.

*James O. Goodwin,* of Oregon City, argued the cause for respondent. On the brief was Glenn R. Jack, of Oregon City.

Before LATOURETTE, Chief Justice, and LUSK, BRAND, TOOZE and PERRY, Justices.

BRAND, J.

The grand jury for Washington County returned into court an indictment reciting that

"GEORGE HORACE EDWARD SMITH is accused by the Grand Jury of Washington County by this indictment of the crime of NEGLIGENT HOMICIDE committed as follows:"

The defendant demurred to the indictment upon the ground that "said indictment does not state facts sufficient to constitute a crime of Negligent Homicide." The trial court sustained the demurrer and the state appeals. The indictment alleged:

"That the said defendant, George Horace Edward Smith, on the 7th day of July, 1952, in the County of Washington, State of Oregon, then and

there being, and being then and there the driver and operator of a certain motor vehicle, to-wit: a 1945 G. M. C. truck, bearing Oregon License No. T5-832, said truck then and there being attached to and pulling a 1940 Pointer Willamette trailer, bearing Oregon license No. T60-856, upon a public highway, to-wit: Highway No. 217, approximately five hundred (500) yards south of the intersection of said Highway No. 217 with Highway 99-W, did then and there wilfully and unlawfully drive and operate said motor vehicle in a negligent manner, to-wit:

"(1) By then and there operating said motor vehicle and trailer, the same being inherently dangerous, in that the coupling device connecting said trailer with said truck did not then and there contain an adequate and suitable locking device or any locking device whatsoever for the prevention of accidental separation of said motor vehicle and trailer;

"(2) By then and there driving and operating said motor vehicle and trailer the same being inherently dangerous in that said motor vehicle and trailer were not equipped with safety chains permanently attached to either the towed or towing vehicle, or any safety chains whatsoever;

"And the said George Horace Edward Smith did in the operation of said motor vehicle and trailer in the negligent manner aforesaid cause the trailer reach to become unfastened from the said truck and the logs then and there being on said trailer and truck to fall upon and against a 1951 Pontiac station wagon, bearing Oregon license No. 812-142, then and there proceeding in an opposite direction from said motor vehicle and trailer and to crush William Henry Holmes against the seat and floor of said station wagon, and did there by [sic] wilfully, unlawfully and feloniously inflict and cause to be inflicted, upon the person and body of said William Henry Holmes, certain injuries as a proximate result of which said injuries, the said

William Henry Holmes on the 7th day of July, 1952, did die, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.''

Negligent homicide is defined as follows:

"When the death of any person ensues within 1 year as the proximate result of injuries caused by the driving of any motor vehicle in a negligent manner, the person so operating such vehicle shall be guilty of negligent homicide, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than 1 year, or in the state penitentiary for not more than 3 years, or by a fine of not to exceed twenty-five hundred dollars ($2,500), or by both such fine and imprisonment.'' OCLA, § 23-410a, Oregon Laws 1941, ch 439.

The contention of the appellant is that the driving of a motor vehicle, knowing it to be inherently dangerous, constitutes the crime of negligent homicide, as defined by OCLA, § 23-410a, supra.

The indictment alleges that the defendant wilfully and unlawfully drove the truck and trailer "in a negligent manner", but the indictment does not stop there. It specifies the particular acts performed by the defendant, which, it is said, constituted driving in a negligent manner. The specifications are preceded by the words "to-wit". Defendant is charged with driving in a negligent manner, to wit, he drove a truck to which was attached a trailer, on a public highway, there being no safety chains and no locking device for the prevention of accidental operation of the two vehicles, and the said vehicles, in that condition, being inherently dangerous. It will be observed that it was in the operation of the motor vehicle "in the negligent manner aforesaid", that the defendant did cause the trailer reach to become unfastened from the

truck and the logs on the trailer to fall against a car, causing the injury and death of William Henry Holmes. Then follows the allegation that the defendant did "there by" [sic] wilfully, unlawfully and feloniously inflict the injury.

The crime defined in OCLA, § 23-410a is expressly referred to in other sections of the statute as the crime of negligent homicide, and negligent homicide, as therein defined, is the crime on which the state relies. As we construe the indictment, the only physical act alleged to have been performed by the defendant was the driving of something which was inherently dangerous in the "negligent manner aforesaid", thus causing the reach to become unfastened and the injury to follow. Reduced to its lowest terms, the question for decision is whether, under the statute, driving in a negligent manner means, how you drive, or what you drive. The careful operation of a dangerous instrumentality upon the highway may be actionable or criminal if a statute so provides, but the defendant argues that such conduct does not come within the meaning of driving in a negligent manner. As applied to vehicles, the verb "drive" means "To urge on and direct the motions or course of, as the beasts which draw a vehicle or the vehicle drawn; as, to drive a team, an automobile, * * *." Webster's International Dictionary, Second Edition.

■ The controlling principles are well-established. As used in the penal code, the word "negligent" imports "a want of such attention to the nature or probable consequences of the act or omission referred to, as a prudent man ordinarily bestows in acting in his own concerns." OCLA, § 23-109. Under the statute, it is the act referred to, (in this case, the driving) which must be characterized by want of attention. In con-

struing the negligent homicide act, we must be controlled by the provisions of the statute.

> "The rule of the common law that penal statutes are to be strictly construed has no application to this Code, but all its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." OCLA, § 23-106.

In the construction of an indictment we must be controlled by the provisions of OCLA, § 26-712 which are as follows:

> "The words used in an indictment must be construed in their usual acceptation, in common language, except words and phrases defined by law, which are to be construed according to their legal meaning."

This court has, in the main, given full effect in the provision of statute which has abrogated the common-law rule of strict construction in penal cases. *State v. Brown,* 7 Or 186; *State v. Turner,* 34 Or 173, 55 P 92, 56 P 645; *State v. Bailey,* 115 Or 428, 236 P 1053; *State v. Dunn,* 53 Or 304, 99 P 278, 100 P 258; *State of Oregon v. Moore,* 192 Or 39, 233 P2d 253.

> "In construing penal statutes the legislative intent in most instances is to be found by giving words the meaning in which they are used in ordinary speech." *State of Oregon v. Moore,* supra, 192 Or 39, 233 P2d 253.

██ Even under the provisions of statute we may still safely say that a penal statute will not be construed to include any act not clearly and intelligibly described in the words thereof and that the words used should be given the meaning in which they are used in ordinary speech. We are to seek a sensible and reasonable construction according to the fair import of the words

used. *State v. Fisher,* 53 Or 38, 98 P 713; *State v. Dunn;* and *State of Oregon v. Moore,* both supra.

In support of his contention that the indictment states facts constituting the crime of negligent homicide, the prosecutor calls attention to the fact that violation of a penal statute, or of provisions of the Motor Vehicle Code, constitutes negligence per se. He calls attention to the statutory requirement of the Oregon Traffic Act which reads in part as follows:

> "When one vehicle is towing another * * * the coupling device * * * shall be * * * provided with a suitable locking means to prevent accidental separation of the towed and towing vehicles." Oregon Laws 1951, Chapter 405, Section 4, subsection 2.

Other provisions of the traffic act are cited, and it is apparent that a violation of such provisions would, in an action for damages, constitute negligence per se. *Birks v. East Side Transfer Co.,* 194 Or 7, 241 P2d 120. But it does not follow that the violation of such regulations would constitute driving "in a negligent manner" under the provisions of the Negligent Homicide Act.

The prosecution cites Section 500 of the Vehicle Code of California, Statutes of California, 1935, and asserts that its provisions are very similar to the Oregon statute. The California statute reads as follows:

> "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years."

Mere inspection will disclose that the California act is substantially broader in scope than its Oregon counterpart. Under the California act, conviction may be had for causing death by driving in a negligent manner, or for causing death while driving in the commission of an unlawful act, not amounting to felony. The latter provision is not found in the Oregon statute. The prosecution relies on two cases decided under the California statute. In *People v. Pryor,* 17 Cal App2d 147, 61 P2d 773, the defendant was convicted under the Negligent Homicide Statute, but the evidence established that the manner of driving was negligent. He drove at excessive speed; passed a red lantern; a burning flame pot; and a watchman waving a red lantern; and then crashed into the rear of another vehicle. The conviction was affirmed. The case bears no resemblance to the one at bar. The opinion of the court does, however, throw some light on the matter of the proper construction of the indictment in the pending case. The information directly charged negligent homicide, i.e., the driving of a vehicle in a negligent manner. It also charged that the act was done wilfully. The California court held that the word "wilfully" should be treated as surplussage. The same rule applies as to the use of the same word in the indictment now under consideration.

In *People v. Warner,* 27 Cal App2d 190, 80 P2d 737, the defendant was charged with violation of the California Negligent Homicide Statute. The evidence disclosed that he swung his car onto the wrong side of the road; came into contact with a parked car, and struck a child. It was held that the defendant was negligent *in the operation* of his truck. In commenting upon the Negligent Homicide Statute, the court made an obser-

vation which is pertinent in the pending case. We quote:

> "It is apparent that it was the intention of the legislature in enacting section 500 of the Vehicle Act to define a crime different from that provided for in the definition of manslaughter, and to cover a different class of crimes than those within the purview of the provisions of the Penal Code."

Evidence was received tending to show that the defendant was driving with an obscured windshield, "a misdemeanor not charged in the information". As we have seen, such an act in violation of statute, and causing death, may amount to negligent homicide under the California act, although not under the Oregon statute. This alone differentiates the case from the one at bar. The court affirmed the conviction on the ground that the defendant was negligent *"in the operation"* of his truck, and added:

> "* * * Also, the fact that the driver was operating the car with a dirty windshield was not a charge of a separate offense, nor was it an attempt to set up the fact that the death was caused by the commission of an unlawful act not amounting to a felony, but was admitted only as a circumstance in the proof of negligent operation of the truck."

The information merely charged the defendant with driving in a negligent manner on the left-hand side of the road, and it was for that act that the defendant was properly convicted.

The prosecutor also relies upon *Richardson v. Commonwealth*, 192 Va 55, 63 SE2d 731. In this case the defendant was charged with involuntary manslaughter, which crime, under the laws of Virginia, involves the element of such reckless, wanton or fla-

grant conduct as to show utter disregard of the safety of others. The defendant was convicted and the conviction was affirmed. The court calls attention to the distinction between involuntary manslaughter and negligent homicide and refers to the fact that several states have adopted statutes making a simple act of negligence which results in death a crime, i.e., negligent homicide. There is nothing in this case which supports the contention of the prosecutor.

The prosecutor also cites *State v. Champ,* 172 Kan 737, 242 P2d 1070. In that case an information was filed under the provisions of the statute condemning manslaughter, which reads as follows:

> "Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

The information charged that the defendant unlawfully and feloniously with culpable negligence drove in a careless and reckless manner, such as to indicate a wilful, wanton and negligent disregard of the safety of other persons, in that he drove when he knew he was fatigued and sleepy, and that he fell asleep and allowed the vehicle to cross the center of the highway and into the path of another vehicle, resulting in the death of an occupant. It was held that

> " 'If death results from unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety, and the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law.' "

The court called attention to the statute making it a misdemeanor to drive on the left half of the highway, and held that the information sufficiently alleged manslaughter. The court also took note of the negligent homicide statute which is a part of the motor vehicle code of the state of Kansas, and which reads as follows:

> "When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

The court held that, depending upon the evidence, the defendant could be convicted of manslaughter, negligent homicide, or reckless driving. It was held that the defendant could be held guilty of manslaughter because he caused death while performing an unlawful act, a matter embraced in our manslaughter act, OCLA, § 23-406 as amended, but not embraced in our Negligent Homicide Statute. Obviously, negligent homicide was considered to be a lesser and included offense within the crime of manslaughter. The Kansas Negligent Homicide Statute differs from the Oregon enactment in that it refers to the operation of a vehicle in negligent disregard of the safety of others, whereas the Oregon statute refers to operation in a negligent manner.

The Oregon Negligent Homicide Statute is not a lesser offense included within the crime of manslaughter. The provisions of OCLA, §§ 23-406 and 23-410, as they are amended by Oregon Laws 1941, Chapter 439, expressly exclude acts defined as negligent homicide from the definition of manslaughter. Nevertheless, the statute does manifest a clear intent to make negligent homicide a lesser offense than man-

slaughter, though not an included one. Negligent homicide may be punished by jail sentence or by a fine. Manslaughter is punishable by imprisonment in the penitentiary not less than one or more than 15 years and by a fine.

■■ We must judge the intention of the legislature by what it has said. The only act which has been condemned as negligent homicide under the Oregon statute is the act of driving in a negligent manner. It relates to the way in which the vehicle is operated and not to the character of the vehicle itself. Since the indictment manifests a clear intent to charge negligent homicide, which might result in a conviction only of a misdemeanor, and since the case has been argued in the lower court and here upon that theory, we are not disposed to consider whether the acts recited could, under other circumstances, be construed as charging the more serious crime of manslaughter a felony.

The judgment is affirmed.