Argued April 23, affirmed May 28, petition for rehearing denied
July 27, petition for review denied October 5, 1971

## STATE OF OREGON, *Respondent, v.*
## STEVEN JOHN MARTINELLI, *Appellant.*

485 P2d 647

*Charles D. Burt*, Salem, argued the cause for appellant. With him on the brief were Brown and Burt, Salem.

*John Snyder*, District Attorney, Dallas, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Defendant, indicted for second degree murder, was convicted of involuntary manslaughter. ORS 163.-040 (2). He appeals.

The defendant and three others, all teen-agers, were riding about late one evening in the defendant's car, which he drove during the period in question. Toward midnight while driving along a graveled road the defendant stopped the car on a railroad crossing. The defendant had consumed from four to five beers in the two previous hours. The lights were turned off. The vehicle remained parked across the railroad tracks for a minimum period of 15 minutes. At the conclusion of this period it was struck by a train. One of the passengers, a girl riding on the passenger's side of the front seat, was killed. From the evidence[1]

---

[1] Appellant's brief in its Statement of Facts asserts:

"* * * The Transcript is entirely silent as to how the car got upon the crossing * * *. There is, in the evidence, no explanation for the vehicle's presence there."

Ronald Teal was a passenger seated in the rear seat of the

the jury could also have found that the defendant knew he had stopped the car across the tracks; that at the time, defendant stated they "shouldn't set there

---

car and was injured in the collision. While he was in the hospital defendant visited him at the hospital. At the trial, Teal testified:

"Q  Will you tell what this conversation consisted of in the hospital?

"A  He come in, first of all, and asked me how I was feeling, and everything, and then he asked me if I remembered anything about the accident, and I told him no, which I didn't, and he said that I was awake while we were sitting on the railroad tracks, and I couldn't remember. He kept asking me if I remembered sitting there talking to him.

"Q  All right. Did he say anything to you about how he got on the railroad tracks?

"A  Yes, he did. He said he pulled up there and stopped and was going to get out and go to the restroom, and he—I guess he didn't. I'm not sure.

"Q  Anyway, he said he pulled up and stopped on the tracks?

"A  Yes.

"Q  He give you any reason for picking the railroad for stopping on?

"A  I believe he said that it was the widest spot in the road.

"Q  All right. And then did he indicate to you any discussion that he might have had with you about the stopping on the railroad tracks at that time?

"A  Yes. He said that—he said that—that we shouldn't set there over a day and a half, or something like that.

"Q  You don't remember any of this?

"A  No, I don't.

"Q  Did you discuss who was driving the automobile on that evening?

"A  No. Except for he said that he was driving and then he got tired and went to sleep or something. I don't know. He thought I was going to drive, or something like this.

"MR. SNYDER: That's all."

And on his cross-examination concerning the above conversation, the following occurred:

"Q  Now, with regard to this railroad track, you recall him saying to you that he didn't know that it was a railroad

over a day and a half"; that all of them were sleepy; that at least the two in the back seat did fall asleep while parked on the crossing, and that at the time of the collision defendant was in the driver's seat.

At the conclusion of the state's case defendant moved for a judgment of acquittal. One ground was insufficiency of the evidence. We think there was sufficient evidence to go to the jury, and the motion was correctly denied.

A principal contention is that the defendant, if guilty of anything, was guilty only of negligent homicide—ORS 163.091, not involuntary manslaughter—ORS 163.040 (2), and that therefore it was error to submit the latter to the jury. He contends that "[t]he provisions of the Negligent Homicide Statute * * *, ORS 163.091, specifically make this the exclusive remedy for a death caused by the operation of a motor vehicle."

The manslaughter statute, ORS 163.040 (2), under which defendant was convicted, provides:

"Any person who, in the commission of any unlawful act, or a lawful act without due caution or circumspection, involuntarily kills another, is guilty of manslaughter. *The provisions of this subsection shall not apply to the killing of any person where*

---

track when he stopped? He thought it was just a wide place in the road?

"A    I don't remember that, no.

"Q    Okay. But you do remember that he picked a spot in the road to stop because he was going to go to the bathroom?

"A    Yes, but he admitted that he knew that he was on the tracks.

"Q    After he had stopped?

"A    Yes."

*the proximate cause of such killing is an act or omission defined as negligent homicide in ORS 163.091."* (Emphasis supplied.)

ORS 163.091 provides:

"Negligent homicide if death caused by gross negligence in *driving* a motor vehicle or by *driving* vehicle defectively equipped or loaded. When death of any person ensues within one year as the proximate result of injuries caused by:

"(1) The *driving* of any motor vehicle or combination of motor vehicles in a grossly negligent manner; or

"(2) The *driving* of a vehicle or combination of vehicles which is known or should have been known by the driver to be defectively equipped; or

"(3) The *driving* of a vehicle or combination of vehicles which is known or should have been known by the driver to be defectively loaded;

the person *driving* such vehicle or combination of vehicles is guilty of negligent homicide, and, upon conviction, shall be punished * * *." (Emphasis supplied.)

■ ■ Thus it is clear the negligent homicide statute, ORS 163.091, by its own language, applies *only* to the *driving* of a motor vehicle in a grossly negligent manner or where the vehicle is defectively equipped or loaded.

Defendant was indicted for "halting, stopping and parking his automobile" on the railroad tracks. The issue becomes: does the term "driving" as used in the statute include the conduct of "halting, stopping and parking"? We note again that the vehicle remained stopped, motor off and lights out, for at least 15 minutes before and at the time of the accident.

In *State v. Smith*, 198 Or 31, 255 P2d 1076

(1953), the court was called upon to construe a predecessor negligent homicide statute, § 23-410a, OCLA, which provided:

> " 'When the death of any person ensues within 1 year as the proximate result of injuries caused by *the driving of any motor vehicle* in a negligent manner, the person so operating such vehicle shall be guilty of negligent homicide \* \* \*.' " (Emphasis supplied.) 198 Or at 34.

The defendant was indicted for driving a defectively loaded and operated truck. The issue there was whether the statute, above, means how one drives or what one drives. The court held that the statute refers to how and not what, defining the word "drive" as follows:

> "\* \* \* As applied to vehicles, the verb 'drive' means 'To urge on and direct the *motions* or course of, as the beasts which draw a vehicle or the vehicle drawn; as, to drive a team, an automobile \* \* \*.' Webster's International Dictionary, Second Edition." (Emphasis supplied.) 198 Or at 35.

The general rule is that in cases arising under statutes which prohibit the driving of a motor vehicle by a person who is intoxicated or who is under the influence of intoxicating liquor, the word "driving" is construed as requiring that the vehicle be in motion in order for the offense to be committed. Annotation, 47 ALR2d 570, 573 (1956). See also, 61A CJS 351, Motor Vehicles § 628; 3 Wharton, Criminal Law and Procedure 166-67, § 993 (Anderson 1957). This, of course, is not to say that a defendant must be driving at the time of his arrest on such a charge.

Thus we think the negligent homicide statute does not apply to the fact situation shown above.

Since the defendant was not convicted of second

degree murder, we need not determine whether the court was correct in submitting that contention to the jury. No prejudice, in any event, resulted therefrom.

The remaining assignment of error is without merit.

The judgment is affirmed.