Argued and submitted November 15, 1982, affirmed February 16, reconsideration denied April 1, petition for review denied April 26, 1983 (294 Or 792)

STOVALL,
*Respondent - Cross-Respondent,*

*v.*

PERIUS,
*Respondent - Cross-Appellant,*
CITY OF PORTLAND,
*Appellant - Cross-Respondent.*

(A8003-01179; CA A22509)

659 P2d 393

Ridgway K. Foley, Jr., Portland, argued the cause for appellant - cross-respondent, City of Portland. With him on the briefs were Rhona Friedman, Deputy City Attorney, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent - cross-respondent, David Stovall. With him on the brief were Jan Thomas Baisch, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Timothy N. Brittle, Portland, argued the cause for respondent - cross-appellant, David Perius. With him on the brief was Acker, Underwood & Smith, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In this personal injury action involving two defendants, the jury found the City of Portland (City) 75 percent at fault. The City assigns four errors, each concerning jury instructions. Defendant Perius (Perius), whom the jury found seven percent at fault, cross-appeals, raising two questions about jury instructions and one about the calculation of damages. We find no error and affirm.

On the night of his injury, plaintiff attended a party at a home on S.W. Taylor's Ferry Road in Washington County. The house was on a portion of the road that runs generally in an east-west direction. Shortly before 1 a.m., plaintiff and a friend, Mekulich, went out to Mekulich's car, which was parked on the shoulder of the westbound lane. They opened the trunk, deposited some beer bottles, closed the trunk and began to return to the house. As Portland police officer George Carl drove past in the eastbound lane, he noticed plaintiff and Mekulich "hurriedly close the trunk and rush away." Thinking their actions suspicious, he immediately halted his vehicle and left it in the eastbound lane with the motor running and the high beam headlights on. He then called for plaintiff and Mekulich to stop and return to the car. As Carl stood with plaintiff and Mekulich by the side of the road, Perius approached by car from the east and crashed into the Mekulich vehicle. Plaintiff was injured in the collision.

Plaintiff brought suit against both the City and Perius. The complaint predicated the City's liability on the allegedly negligent actions of Carl in leaving his vehicle parked in the middle of a traffic lane with its high beam headlights on. Perius was alleged to be negligent because he was driving carelessly and under the influence of intoxicating liquor when he crashed into the Mekulich vehicle. The case was tried to a jury. Both defendants argued that plaintiff acted negligently by failing to heed Carl's warning to stand off the road,[1] by failing to maintain an adequate lookout and by remaining on the traveled portion of the highway in a place of danger. Each defendant also argued that the other was solely responsible for the accident.

---

[1] Officer Carl testified that he warned both plaintiff and Mekulich to move off the road; other witnesses testified that he gave no such warning.

The jury returned a verdict assessing plaintiff's damages at $206,069 and finding the City 75 percent at fault, plaintiff 18 percent at fault and Perius seven percent at fault. Because the Oregon Tort Claims Act, ORS 30.270(1)(b), limited the City's liability to $100,000, the trial judge reduced the judgment against the City to that amount. Judgment against Perius was entered in the amount of $14,424.83. This appeal and cross-appeal followed.

## DEFENDANT CITY'S APPEAL

The City first contends that the trial court erred in giving jury instructions based upon a statute that is not applicable to the facts of this case. The instruction states:

"* * * The statutes of the State of Oregon require that the operator of a vehicle reduce his high beam or bright lights to low beam when an oncoming vehicle approaches within 500 feet."

The court also told the jury that proof of failure to comply with the statutes would constitute proof of negligence.

The statutory basis for the quoted instruction, ORS 483.428, provides in pertinent part:

"* * * Whenever a motor vehicle is being *operated* on a street or highway during the times specified in ORS 483.402(1), the *driver* shall use a distribution of light or composite beam directed sufficiently high and of such intensity so as to reveal persons and vehicles on such street or highway at a safe distance in advance of the vehicle, subject to the following requirements and limitations:

"(1) Whenever the *driver* of a vehicle *approaches* an oncoming vehicle within 500 feet he shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver.

"* * * * *" (Emphasis supplied.)

The City argues that this statute does not apply to the facts of this case because, at the time Perius was allegedly blinded by the lights of the police vehicle, the vehicle was not being "operated," Officer Carl was not a "driver" and the vehicle was not "approaching" an oncoming car. To support its argument, the City quotes the definition of

"driver" contained in ORS 487.005(5)[2] and cites cases for the proposition that a person is a "driver" only if his vehicle is in motion or occupied by him. *State v. Martinelli,* 6 Or App 182, 485 P2d 647, *rev den* (1971) (holding that a person is "driving" only if his vehicle is in motion); *State of Oregon v. Smith,* 198 Or 31, 255 P2d 1076 (1953) (stating that " 'drive' means '[t]o urge on and direct the motions or course of * * * an automobile * * *.' "). With respect to the verb "approach," which is not defined in the statute, the City argues that its strong connotations of forward movement require the adoption of a "common sense definition" incorporating the notion of forward movement.

We agree with the City that the statute, read narrowly, does not apply to the facts of this case, because Carl was not "driving" at the relevant moment and his car was not "approaching" the Perius' vehicle. But we refuse to read the statute so narrowly.

It is a fundamental tenet of statutory construction that, whenever possible, a statute should be construed in a manner that avoids absurd and unreasonable results. *Hollinger v. Blair/Dickson,* 270 Or 46, 53-54, 526 P2d 1015 (1974). As the Supreme Court said in *Pacific P. & L. v. Tax Com.,* 249 Or 103, 110, 437 P2d 473 (1968):

> "* * * [I]t is the duty of a court in construing a statute to ascertain the intention of the Legislature and to refuse to give literal application to language when to do so would produce 'an absurd or unreasonable result,' but, rather,. 'to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the Legislature * * *.' " (Citations omitted.)

The clear purpose of ORS 483.428 is to prevent accidents that are likely to occur if the driver of one motor vehicle is temporarily blinded by the high beam headlights of another.[3] If the statute is construed in the manner urged by the City, a motor vehicle operator will escape liability for accidents caused by the precise menace that the statute addresses if he was not moving forward at the moment that

---

[2] " 'Driver' or 'operator' means any person who is in actual physical control of a vehicle."

[3] Under plaintiff's theory of the case, his injury resulted from just such an accident.

his headlights blinded the oncoming driver. It would be patently absurd to hold a driver liable for an accident that occurred as he was moving toward an intersection with his high beam headlights on but not to hold him liable for creating the same danger simply because he had reached the intersection and stopped when the accident occurred. The only reasonable way to construe ORS 483.428 is to read it, as the trial court did, to apply to all vehicles, moving or stationary, displaying high beam lights on a street or highway. The trial court's instruction was not error.

The City next contends that the trial court erred by instructing the jury that an Oregon statute makes it unlawful for a driver to stop, stand or park a motor vehicle on a public highway without also instructing the jury that the statute excuses compliance with its provisions when a "police officer performs an official duty."

The court's instruction was based on ORS 487.580(1).[4] The City's argument is based on subsection (4) of the same statute, which states that subsection (1) "shall not apply to vehicles * * * when the driver's disregard thereof is * * * in compliance with law * * *." According to the City, because police officers are "mandated by the very nature of their job to investigate what they reasonably believe is suspicious activity," Carl's stop to investigate plaintiff's activities was "in compliance with law."

Although we can find no legislative history on this point, we do not believe that this case presents the type of situation that legislature intended to cover by its use of the phrase "in compliance with law." Our conclusion is supported by the fact that another statute, ORS 487.075, expressly provides for situations when a police officer, in discharge of his duty, may stop his vehicle in a street or highway. That statute provides:

"(1) The driver of an emergency vehicle, * * * when in the pursuit of an actual or suspected violator of the law

---

[4] ORS 487.580 provides in part:

"(1) A driver shall not stop, stand or park a vehicle:

"* * * * *

"(i) On a throughway;

"* * * * *."

* * * is subject to the privileges and conditions set forth in this section.

"(2)   The driver of the emergency vehicle may:

"(a)   Park or stand, in disregard of a statute, regulation or ordinance prohibiting that parking or standing [including ORS 487.580];

"* * * * *

"(3)(a)   The privileges granted to the driver of an emergency vehicle in paragraphs (a), (c) or (d) of subsection (2) of this section apply only when the driver * * * is making use of a visual signal meeting the requirements of ORS 483.423(1)(c) [blue revolving or flashing lamps] and 483.432(5) and (6) [flashing red lights].

"* * * * *

"(d)   The driver of an emergency * * * police vehicle, is not required to use * * * [the] visual signal * * * described in paragraph * * * (a) * * * of this subsection in order to exercise the privileges granted in subsection (2) of this section when it reasonably appears to the driver that the use * * * would prevent or hamper the apprehension or detection of a violator of a statute, ordinance or regulation.

"* * * * *"

In short, a police officer may leave his car in the middle of a road only if the vehicle displays blue or red flashing lights, unless such a display would impede the apprehension or detection of a suspected violator of the law.

A specific act usually controls a general act. *Davis v. Wasco IED,* 286 Or 261, 593 P2d 1152 (1979); *Messmer v. Carter Bonded Credit Co.,* 282 Or 323, 578 P2d 788 (1978). Because ORS 487.075 speaks specifically to a situation that ORS 487.580(4) alludes to only generally if at all, the former statute applies to the facts here to the exclusion of the latter. Carl made no attempt to comply with ORS 487.075, and the City does not explain, pursuant to subsection (3)(d) of that statute, why compliance should have been excused under the facts of this case.[5] Because ORS

---

[5] The City does note that Carl activated the vehicle's alley lights, which throw light out to either side, in order to illuminate the area by the parked vehicles, and that the flashing lights cannot be activated while the alley lights are on. However the City did not request an instruction on ORS 487.075(3)(d) and does not claim that the investigation would have been hindered if the flashing lights had been on and the alley lights off.

487.580(4) has no application, the trial court's instruction was not wrong.[6]

■    The City next attacks this instruction:

"Now, the care required of a person who has become intoxicated is the same as that required of one who is sober. Failure by a person to use that degree of care which an ordinarily prudent, sober person would use under the same or similar circumstances would constitute negligence. So evidence that a party consumed some alcoholic beverage is not evidence of negligence. You may consider evidence of consumption of alcoholic beverage only to determine whether a party was capable of and did exercise ordinary care and prudence under the same or similar circumstances in which he is required to act.

"If you find, from the evidence, that the consumption of the alcoholic beverages did not constitute a contributing cause to this accident, you should disregard such evidence."

The City's argument is twofold. First, it asserts that "the sentence 'evidence that a party consumed some alcoholic beverage is not evidence of negligence,' might mislead a jury into believing that drinking and negligence are unrelated at all." The sentence standing by itself is correct. Moreover, read in context, it cannot have been misleading.

The City's second argument is that the instruction frames the intoxication issue in two ways so different from one another that they "could do nothing other than confuse the jury * * *." With the exception of the sentence discussed

---

[6] The City also argued that the instruction attacked in this assignment of error "effectively directed a verdict for plaintiff" on the liability issue, because the City had conceded that Officer Carl had left his vehicle in the middle of the road. Defendant is mistaken.

The trial court's instruction to the jury on statutory negligence included the following:

"* * *[W]hen I call your attention to any * * * statute [that requires or forbids certain conduct for the safety or protection of others], a violation of that statute by a party constitutes negligence, in and of itself, unless you find, from all of the evidence, that such party has established that he was acting as a reasonably prudent person under the circumstances."

Under that instruction, the jury could have found for the City. There was therefore no *de facto* directed verdict.

above, the parties agree that the first paragraph correctly states the rule. The City argues, however:

> "The last sentence of the instruction * * * [posed the *determinative issue to be*] *whether or not defendant Perius'* drinking directly caused the accident [when the real issue to be decided] was whether defendant Perius, intoxicated or sober, exercised that degree of care which a reasonably prudent person would exercise under the circumstances."

We disagree. The first part of the instruction properly informed the jury that evidence of alcohol consumption was not, standing alone, evidence of negligence, but that the evidence could be considered by the jury in determining whether Perius had exercised reasonable care. The second part of the instruction says the same thing but in different words. The only way Perius' alleged intoxication could have been a "contributing cause" to the accident would have been if his intoxication had caused him to fail to exercise reasonable care. The instructions are therefore not "internally inconsistent," as the City claims.

■ ■ The City's final assignment of error attacks the trial court's instruction on common law negligence. It asked the court to include the sentence "Defendants Carl and Perius and plaintiff Stovall are all held to this same standard of reasonable care." The court refused. The City argues that, absent the requested language, the jury "could well assume" that the police officer would be held to a higher standard of care simply because he was a police officer. We fail to see why.

The trial court did instruct the jury:

> "In general it is the duty of *every person in our society* to use reasonable care to avoid damage to himself or to *another person in any situation in which it would be* reasonably anticipated that a faiure to use such care might result in such damage."

This instruction informed the jury of the duty of "every person in our society" with no hint of a higher standard for police officers. The jury was therefore told that the standard of reasonable care applied with equal force to all parties. A trial judge has no duty to give an instruction if its substance has been fully covered by other instructions.

*Kabil Developments Corp. v. Mignot,* 279 Or 151, 158-59, 566 P2d 505 (1977).

## DEFENDANT PERIUS' CROSS-APPEAL

■ Perius first assigns as error the trial court's denial of his motion for mistrial. The motion was based on statements by plaintiff's counsel in argument to the jury that the lawsuit was a "business matter" or "commercial transaction" and that the jury was "not to consider his [Perius'] wealth, where the money comes from, none of that." Perius contends that plaintiff's counsel made those statements to "get the jury to speculate whether insurance is involved."

In *Lunski v. Lindemann,* 270 Or 316, 321, 527 P2d 254 (1974), the Supreme Court stated:

"The intentional injection of insurance in the trial of a personal injury case is ordinarily a ground for a mistrial unless the circumstances are such as to negate the likelihood of prejudice. * * * Even in such a case, however, the granting or denial of a motion for mistrial is ordinarily a matter to be determined by the trial judge in the exercise of his discretion. * * *"

The context of the remarks in question indicates that plaintiff's attorney was attempting to persuade the jury to eliminate sympathy for defendant's financial plight and other emotions from their decision-making process.[7] Moreover, the statements contained no reference to insurance. In view of the nature of the comments and their apparent purpose, the trial judge did not abuse his discretion by denying defendant's motion for mistrial.

■ Perius next assigns as error the trial court's refusal to give this instruction:

"If you find plaintiff is entitled to damages in this case, you are instructed that any such award will not be subject to federal income taxes and, therefore, you should not add or subtract for such taxes in fixing the amount of any award."

---

[7] In opening argument, plaintiff's counsel stated:

"It is a business transaction, a commercial transaction. You don't consider where the money comes from; you just consider: Was the City negligent? Was the defendant driver negligent? Was David negligent? 'Yes' or 'No.' No sympathy, no emotion, no prejudice; just a straight analytical decision-making process."

The requested instruction is a correct statment of federal income tax law, 26 USC § 104(a)(2), but the trial court's refusal to use the instruction was not reversible error.

In *Geris v. Burlington Northern, Inc.*, 277 Or 381, 396, 561 P2d 174 (1977), a case arising under the Federal Employers' Liability Act (FELA), the trial court refused to give an instruction similar to the one requested here. The Supreme Court held that such an instruction should be given when requested, "at least in * * * actions arising under federal substantive law * * *." But the court refused to reverse, because omission of the instruction had not resulted in an excessive verdict or otherwise prejudiced the defendant. This case does not arise under federal substantive law, so *Geris* and the FELA cases do not mandate the instruction. There is no indication that the absence of the instruction prejudiced defendant in any way. There is no error. *See Geris v. Burlington Northern, Inc.*, supra; *Salsgiver v. E. S. Ritter Co.*, 42 Or App 547, 550, 600 P2d 951, *rev den* (1979).

██ ██Finally, Perius asserts that the amount of the judgment entered against him—$14,424.83—is too high. ORS 18.485 controls the allocation of damages liability in this case:

> "Each joint tortfeasor defendant is jointly and severally liable for the entire amount of the judgment awarded a plaintiff, except that a defendant whose percentage of fault is less than that allocated to the plaintiff is liable to the plaintiff only for that percentage of the recoverable damages."

The jury found that plaintiff was 18 percent at fault and that Perius was 7 percent at fault. The jury also found that plaintiff would have been entitled to a total of $206,069 in damages if he had not been at fault. The trial court used the $206,069 figure as the basis for its computation, *i.e.,* the "recoverable damages," and concluded that Perius was required to pay 7 percent of that amount.

Perius claims that "recoverable damages" means something different from total damages and suggests a complicated five step "Formula Approach" to the computation of damages. We do not feel constrained to explain this formula, other than to say that it would enable Perius to

benefit from the $100,000 limit on the City's liability. We are certain that the drafters of the Oregon Tort Claims Act did not intend co-defendants with government bodies to benefit from its provisions and we reject the "Formula Approach."

As an alternative, Perius argues that " 'recoverable damages' includes, at the very least, a deduction for plaintiff's own negligence." However, the legislative history of ORS 18.485 indicates quite clearly that a percentage commensurate with the plaintiff's negligence is not to be deducted from the total damages award before a defendant's liability is computed. During the legislative deliberations, both Senator Cook and Representative Frohnmayer illustrated how the statute would work if a hypothetical plaintiff had been 40 percent at fault and two co-defendants had each been 30 percent at fault. According to Senator Cook, if the plaintiff had sustained $100,000 worth of damages, he would be entitled to a $60,000 recovery and each defendant would be liable for $30,000. Minutes, Senate Committee on Judiciary 13 (April 14, 1975 - Comments of Senator Cook). Each defendant's liability would thus be 30 percent of the *total* $100,000, not 30 percent of the $60,000 to which the plaintiff would actually be entitled. Representative Frohnmayer's example illustrated the same principle, using different figures. Minutes, House Judiciary Committee, Appendix G pp. 2, 4 (May 28, 1975 - Memorandum from Rep. Frohnmayer). These hypotheticals show that the legislators considered "recoverable damages" to be the amount of damages that a plaintiff would be entitled to absent contributory negligence. The trial judge used the appropriate figure for his computation. There was no error.

Affirmed.