Submitted February 26, affirmed August 19, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER K. BILSBORROW,
*Defendant-Appellant.*

Multnomah County Circuit Court
061052662; A135785

215 P3d 914

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

Portland police officers found defendant asleep and drunk behind the wheel of his parked car. A jury convicted him of driving under the influence of intoxicants (DUII). ORS 813.010. On appeal, he argues, first, that the trial court erred in denying his motion for a judgment of acquittal (MJOA) because there was no evidence that he had operated the car while intoxicated; and second, that the court abused its discretion by denying his motion for a mistrial after the prosecutor, in closing argument, misstated the law by telling the jury that, if a car's engine is running, "that's movement" for purposes of the DUII statute. The state, in response, argues that the circumstantial evidence was sufficient for the jury to infer that defendant drove while intoxicated and that the court's instructions to the jury remedied any confusion that might have been caused by the prosecutor's misstatement. We affirm.

We review the denial of an MJOA to determine whether, after viewing the facts and the inferences that can reasonably be drawn from them in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). The facts under that standard are as follows.

At around 2:00 a.m. on September 20, 2006, Portland Police Officers Winters and Pak responded to a report that a man was "passed out" at the wheel of a car parked against a curb at an address in downtown Portland. They found defendant asleep in the car with his head on the steering wheel and his foot on the brake; the car was running, the headlights were off, the emergency brake was not engaged, and the brake lights were on. The car was in a lawful parking space, parallel to the sidewalk with its front wheels turned into the curb. Pak parked his car directly in front of defendant's car and Winters parked his car directly behind it, preventing the car from moving, so that, if defendant "woke up and hit the gas pedal, he wouldn't crash into a building or other people or ourselves." Winters tapped on the window twice to awaken defendant and then, noticing that

the driver's side door was unlocked, opened the door. Immediately, Winters noticed "the strong odor of alcohol." Defendant was slow to respond, and he appeared "confused." Because the officers were afraid that defendant's foot might hit the accelerator, they asked him to get out of the car. Winters helped defendant because defendant "was very unstable on his feet, he was very wobbly. I had to hold him up for a second until he was able to catch his balance." Winters set the parking brake, shifted the car out of gear, and removed the keys from the ignition. The officers then took defendant to the police station for a breath test. Neither the person who reported the car to the police nor the police officers saw the car move.

At the station, defendant consented to a breath test, which indicated that his blood alcohol content was 0.18 percent. He told the officer who administered the test that he had parked his car where it was found before becoming intoxicated at two nearby bars; that he had decided that he would walk back to the car and then drive to a friend's house to sleep before returning to his home in Astoria; but that, once in the car, he had fallen asleep before moving it. He denied having driven the car while intoxicated. Nonetheless, he was charged with DUII and reckless driving.

At the close of the state's case, defendant moved for a judgment of acquittal on both charges. The trial court granted his motion on the reckless driving charge but denied it on the DUII charge, concluding that

> "there is sufficient evidence in the record from which a juror could reasonably draw an inference that defendant is guilty of that charge based on the evidence of his condition combined with his foot being on the brake, the car being in gear and the engine running, and the testimony about where he told the officers he was headed."

Defendant subsequently testified and recounted the events preceding his arrest. His account was consistent with what he had told the officer on the night of his arrest insofar as, in both accounts, he related parking the car where he was found, then drinking, and then walking to the car and never putting it in motion. The account at trial differed, however, in one respect: At trial, defendant testified that he had changed

his mind about driving to his friend's house before returning to his car and that the reason the engine had been running was not because he was about to drive away when he fell asleep, but because he wanted to listen to music through the car's radio and did not want to run down the battery. The jury evidently did not believe defendant's account and returned a guilty verdict.

On appeal, defendant in his first assignment of error argues that the state failed to present evidence from which a rational juror could conclude beyond a reasonable doubt that he put his car in motion while he was intoxicated and that such evidence is necessary to sustain a conviction for DUII. The state, in response, agrees that a vehicle in motion is a necessary element of DUII, but argues that the jury could reasonably have inferred from the evidence that defendant had, in fact, put the vehicle in motion while he was intoxicated.

■     Under ORS 813.010(1), "[a] person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle" while exceeding the lawful blood alcohol limit or otherwise being under the influence of intoxicants. Although that statute does not define the term "drives," we previously concluded that "one who 'drives' a car within the meaning of ORS 813.010 * * * [is] one who operates, tows, moves or otherwise propels it in any way." *Moe v. MVD*, 133 Or App 75, 79, 889 P2d 1334 (1995). We also adopted the rule that, for purposes of that statute, "the word 'driving' is construed as requiring that the vehicle be in motion in order for the offense to be committed." *State v. Martinelli*, 6 Or App 182, 187, 485 P2d 647 (1971). The car need not be in motion, however, at the time of the defendant's arrest. *Id.*

■■     The question before us, then, is whether a rational juror could conclude from the facts presented that, as the state argued, defendant first became intoxicated and then drove the car to the parking spot where it was found. The state maintains that the conclusion can be inferred from the undisputed facts: the engine was running, the car was in gear, and defendant's foot was on the brake. Those facts, the

state contends, are adequate circumstantial evidence. Defendant, for his part, argues that such a conclusion is nothing more than conjecture or speculation. The distinction is critical: Reasonable inferences from circumstantial evidence are permissible; speculation and guesswork are not. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004).

Defendant's best argument runs as follows. According to the state, sometime before defendant was found with the car in gear, he drove to the parking place where he was found. The facts on which the state relies to support its theory, the argument continues, support another theory equally as well: It is possible that a drunk person who is found in a parking place in a car that is in gear with the engine running (but the headlights out) has driven to that place while drunk and then passed out or fallen asleep. However, it is *equally* possible that the person has walked to the car, turned it on, put it in gear, and then passed out or fallen asleep. When the possibilities are, as it were, equally possible, then (defendant contends) the choice between them can be nothing but guesswork. By analogy: Imagine that a jury was asked to review a referee's decision in a "two-out-of-three" coin toss contest. The facts establish only that the second toss came up heads, at which point the referee declared the contest over on the ground that the first toss, as well, was heads. One player swears that the first toss was tails and maintains that the referee erred in ending the contest. The other swears that the first toss was heads and maintains that the referee did not err. In other words, as in the present case (according to defendant), the evidence is in equipoise as to what occurred before the undisputed fact. In such a situation, we would have to conclude that the referee simply guessed.

■     That argument is intriguing, but it does not help defendant. Even if we were to agree that the facts before the court when it ruled on the MJOA were in pure equipoise, that is, pointing with equal logical force (or lack thereof) to the state's version of events and defendant's, we do not look only at those facts. Even when, as here, a defendant makes the MJOA at the close of the state's case, "the appellate court must consider all the evidence and if it is sufficient to sustain the conviction, the defendant cannot complain that his motion for acquittal made at the close of the state's case was

denied." *State v. Gardner*, 231 Or 193, 195, 372 P2d 783 (1962); *State v. Nix*, 7 Or App 383, 384-85, 491 P2d 635 (1971). The evidence before the jury when it went to deliberate, unlike the evidence before the court when it ruled on the MJOA, included defendant's testimony. In that testimony, defendant presented an account of events that was both extrinsically and intrinsically implausible: extrinsically, because it conflicted with the account he gave at the time of his arrest (with respect to whether he intended to drive to a friend's house or remain in the car overnight); and intrinsically, because a person who wanted to sleep off his intoxication would be unlikely to start the car and put it in gear. By his testimony, in other words, defendant changed the terms of the dispute. Even if, before his testimony, his version of events was equally as plausible as the state's, his testimony had the effect of tilting the balance in favor of the state. Presented only with two theories—defendant drove his car to the parking space either before he became drunk or after—the jury, having heard implausible evidence that he drove there before, could permissibly have found beyond a reasonable doubt that he drove thereafter. We therefore reject defendant's first assignment of error.

The question that we confront in defendant's second assignment of error is whether the jury not only *could* find that defendant drove to the parking space while intoxicated, but also that it *did* so find. Defendant argues that, due to an uncorrected misstatement of the law by the prosecutor, the jury may have returned its verdict under the belief that defendant walked to the car after drinking and then "drove" it when he turned on the engine.

As noted above, it is well settled that, to be guilty of DUII, a person must "drive" while intoxicated, ORS 813.010(1), and "driving" requires putting a vehicle in motion, *Martinelli*, 6 Or App at 187. During closing argument, however, the prosecutor told the jury, "The engine was running. That's—that's movement. There's not a—I don't think you're going to get instructed about any kind of momentum." Defense counsel objected. Outside the presence of the jury, defense counsel requested a mistrial on the ground that the prosecutor had misstated the law. The court denied the motion. It did not, however, announce to the jury

whether defense counsel's objection had been sustained or overruled.

The court then instructed the jury. One of the instructions contained this statement: "Driving is defined as a vehicle in motion for the offense to be committed." The jury retired to deliberate, but, while deliberating, sent the court a question, which the court read into the record: "In closing statements by the DA reference—reference was made that the engine running equals momentum, there was an objection, and no direction afterwards of sustained or overruled. Does engine running mean momentum and therefore momentum equal motion? What was the result of the objection?" Defense counsel requested a clarifying instruction. The court declined. Instead, it informed the jury that "the objection was sustained" and "you should rely on the written instructions as to the definition of driving."

Defendant argues that, under the circumstances described, (1) the jury heard from the prosecutor that a car with a running engine is moving; (2) the jury also heard from the court that driving requires motion; (3) the jury was confused by those two statements as to whether "engine running" equals "motion"; and (4) the court's effort to resolve the jury's confusion, by simply repeating that "driving" requires "motion," was probably ineffective. The jury wanted to know whether (as the prosecutor argued) "engine running" meant "motion," and the court merely called the jury's attention to the instruction that "driving" meant "motion," which did not address its question.

■■ We review a decision to grant or deny a mistrial for abuse of discretion. *State v. Bowen*, 340 Or 487, 508, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007). However, the court does not have discretion to deny a mistrial when a prosecutor's comment is a misstatement of the law and that misstatement has the effect of denying the defendant a fair trial, *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990), unless the court gives a sufficiently clear curative instruction, *Bowen*, 340 Or at 508-09. In the present case, there can be no doubt that the prosecutor did, in fact, misstate the law.[1] The state

---

[1] It is clear from the context that the prosecutor's misstatement was the result of momentary confusion. It was not intentional.

does not argue otherwise. If the court in this case had responded by telling the jury only that it should rely on the instruction, then defendant would be correct. That part of the court's response did nothing to alleviate the jury's confusion. However, the court also informed the jury that defendant's objection to the prosecutor's misstatement was sustained. Although, with the benefit of 20-20 hindsight, we might conclude that the court would have been well advised to give a more explicitly clarifying answer, we cannot say that, having informed the jury that the defendant's objection to the prosecutor's statement was sustained (thereby informing them that "engine running" did not equal "motion") *and* having called the jury's attention to the written instruction, the court abused its discretion in denying defendant's motion for a mistrial.

In sum, we conclude that the jury could, and did, find that defendant drove while intoxicated.

Affirmed.