· [No. 16976.   Department Two.   March 15, 1922.]

THE STATE OF WASHINGTON, *Respondent*, v.
O. S. LARSON, *Appellant.*[1]

BANKS AND BANKING (4-1)—OFFENSES—UNLAWFUL LOANS—INFORMATION. Under Rem. Comp. Stat., § 3259, making it a felony to loan bank funds to an officer of the bank without procuring authority by a resolution of the directors, an information charging a consummated loan is sufficient, notwithstanding it charges that the resolution was not *first* procured; since a subsequent approval would be no defense.

BANKS AND BANKING (4-1)—CRIMINAL LAW (110)—EVIDENCE OF OTHER CRIMES. The offense of loaning the funds of a bank to an officer without procuring the ·necessary authority involves no· element of intent or motive; hence it is error to admit evidence of other like offenses or of a custom to pursue that method.

CRIMINAL LAW (229)—TRIAL—SCOPE OF EVIDENCE IN REBUTTAL. In a prosecution for unlawfully loaning the funds of a bank, evidence of other like offenses is not admissible in rebuttal, because of defendant's statements on cross-examination as to defendant's request to another officer to have the loan attended to in the regular way.

BANKS AND BANKING (4-1)—CRIMINAL LAW (458)—SENTENCE—EXTENT OF PUNISHMENT. Under Rem. Comp. Stat, § 3259, making it a felony to loan bank funds to an officer of the bank without a resolution of the directors, the court can only sentence defendant to the penitentiary, and not for a misdemeanor.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered June 14, 1921, upon a trial and conviction of a violation of the banking laws. Reversed.

*Tucker & Hyland* and *Hayden, Langhorne & Metzger,* for appellant.

*J. W. Selden* and *J. A. Sorley,* for respondent.

HOLCOMB, J.—Appellant was indicted, tried, convicted and sentenced for an alleged violation of the

[1]Reported in 204 Pac. 1041.

banking laws, being based on § 52, ch. 80, Laws of 1917, p. 297. That section is as follows:

"No bank or trust company shall, nor shall any officer or employee thereof on behalf of such corporation, directly or indirectly, loan any sum of money to any director, officer or employee of such corporation, unless a resolution authorizing the same and approved by a majority of the directors, at a meeting at which no director, officer or employee to whom the loan is to be made shall be present, shall be entered in the corporate minutes.

"Every director and officer of any bank or trust company who shall borrow or shall knowingly permit any of its directors, officers or employees to borrow, any of its funds in an excessive amount or in violation of the provisions of this section, shall be personally liable for any loss or damage which the corporation, its shareholders or any person may sustain in consequence thereof, and shall also be guilty of a felony." [Rem. Comp. Stat., § 3259.]

The indictment charged the defendant with the crime of loaning the money of a state banking corporation to an officer of such corporation without authority by resolution of the board of directors of the bank authorizing the same, and approved by a majority of the directors, having been first entered in the corporate minutes, and described the offense as follows:

"That the said O. S. Larson in the county of Pierce, state of Washington, on or about the 25th day of September, 1920, then and there being an officer of the Scandinavian-American Bank of Tacoma, a banking corporation duly organized and existing under and by virtue of the laws of the state of Washington, did then and there on behalf of such corporation, unlawfully and feloniously loan to himself the sum of ten thousand ($10,000) dollars, the money and property of such banking corporation, without a resolution authorizing the same and approved by a majority of the directors at a meeting at which the said defendant was not pres-

ent, having been first entered in the corporate minutes, contrary to the form of the statute," etc.

To this indictment appellant interposed a demurrer upon the grounds that it did not substantially conform to the requirements of the criminal code of the state, and that the facts as charged in the indictment did not constitute a crime.

The first error claimed is in overruling the demurrer to the indictment.

It is argued that the indictment signally fails to charge appellant with any offense. It is insisted that the indictment alleging that the loan was made by appellant to himself without the resolution required by the statute having been *first* entered in the corporate minutes alleges an element not found in the statute, namely, the making of the loan prior to the entry of the resolution authorizing the same having been first entered in the corporate minutes. It is urged that the indictment does not charge that a resolution was not passed authorizing the loan, but only that the loan was made prior to the entry in the minutes of the resolution authorizing the same.

It is true that the statute upon which the prosecution is based does not use the word "first" in creating the offense; and it is true that the penal statutes are to be construed strictly, to the end that offenses not entitled to be included shall not be prosecuted. But it is not true that they are to be construed so strictly that they would be defeated by a forced and over-strict construction. *United States v. Morris,* 14 Peters (U. S.) 464, 10 L. Ed. 543; *United States v. Wiltberger,* 5 Wheat. (U. S.) 76, 5 L. Ed. 37; *State v. Stewart,* 52 Wash. 61, 100 Pac. 153.

There is no uncertainty in the language of this statute, and fairly construed, it simply means that, when

an officer or employee of a bank or trust company desires to obtain a loan from that bank or trust company, he shall not make it to himself, but he must procure a resolution authorizing the same, and approval by a majority of the directors at a meeting at which the officer, director or employee to whom the loan is to be made shall not be present, and the resolution authorizing the same shall be entered on the corporate minutes. The obvious effect of this language is that, before the borrowing is consummated, there must be such a resolution, and it must have been passed as required by the statute. The loan referred to in the indictment, as shown by the evidence, was upon a note for the sum of ten thousand dollars, payable to the Scandinavian-American Bank of Tacoma. The note, of course, was only the evidence of the indebtedness, and the loan from the bank to appellant was the money passed to his credit or withdrawn from the coffers of the bank. He, being an officer, as described, of the banking corporation and borrowing the ten thousand dollars, had not consummated the borrowing, or the offense charged, until the money had been passed to his credit or withdrawn from the bank, and, before that consummation, the resolution authorizing the same was necessary under the statute. The indictment was therefore sufficient under the statute, and the demurrer was properly overruled.

Another error claimed by appellant, and intimately connected with the one just discussed, is in the refusal of the court to admit testimony that, on December 10, 1920, the board of directors of the Scandinavian-American Bank approved the loan of September 25, 1920, made by appellant.

Under the statute, if that were done, it could not wipe out the offense. The offense was consummated

by appellant when the ten thousand dollars borrowed, if it was unauthorized as required by statute, was passed to his credit or withdrawn from the bank. One of the evident purposes of the statute was to prevent just such proceedings as might have been adopted as offered to be shown by appellant.

The only other errors urged by appellant which are of any significance, and which we shall discuss, are these: In admitting testimony that appellant had, at other times previous to September 25, 1920, borrowed money from the Scandinavian-American Bank of Tacoma without a resolution of the board of directors authorizing the loan or loans; and in overruling objections of counsel for appellant to the line of testimony indicated in the foregoing assignment, based upon the ground that it was not proper cross-examination of appellant as a witness in his own behalf.

In order to discuss these errors a brief resume of the facts as developed at the trial is necessary.

During the year 1920, appellant was the president and one of the directors of the Scandinavian-American Bank of Tacoma, a banking corporation existing under the laws of Washington. In September, 1920, it became necessary for appellant, in the interest of the bank of which he was president, to make a trip to Philadelphia and other eastern points. On the afternoon of September 24, 1920, appellant signed a note for ten thousand dollars, payable to the Scandinavian-American Bank, and left the note, as he testifies, with Charles Drury, who was then chairman of the board of directors of the bank, with instructions to have the necessary resolution passed by the board and the proceeds of the note passed to his credit. Drury denied that the note was left with him, or that appellant gave him any instructions concerning the same. On the

same day, appellant purchased a ticket over the Chicago, Milwaukee & St. Paul Railway to Philadelphia, to start the succeeding day. About 3 o'clock in the afternoon he left Tacoma for Seattle, went to his home in Seattle, spent the night there, and between 8 and 9 o'clock on the morning of September 25, left for Philadelphia. On September 25, 1920, a note teller in the bank entered the note signed by appellant for ten thousand dollars on the books of the bank, making the proper bookkeeping entries, and credited appellant's account with the proceeds. This teller was a witness at the trial, but could not testify who gave him the note, or who instructed him to make the entries on the books of the bank. He did not believe that Mr. Drury gave him the note. Appellant testified that, on September 24, 1920, he signed a note for ten thousand dollars, payable to the Scandinavian-American Bank of Tacoma, and left the same with Mr. Drury, with instructions to have a proper resolution passed by the board of directors of the bank approving the loan; that he thereupon went to the ticket office of the railway company, purchased a ticket to Philadelphia good for passage on the following day; that he left for Philadelphia the following day between 8 and 9 o'clock in the forenoon, and went directly there; that he was on important business for the bank; that he transacted the business and returned home, and had no knowledge that the resolution approving the loan had not been passed until December 10, 1920.

On cross-examination, over repeated objections of counsel for appellant, the trial court permitted counsel for the state to interrogate appellant concerning other loans he had made from the Scandinavian-American Bank previous to September 25, 1920, in which instances there were no resolutions of the board of directors of the bank authorizing the previous loans,

and whether it was his "habit" or custom to pursue that method.

The trial court required.appellant to so testify on cross-examination on the principle, as stated by the court, that it might tend to show the system of appellant in making or procuring loans from the bank; and respondent contends that this proposition is correct. Respondent further contends that the cross-examination was proper because the matter was opened up by voluntary statements of appellant.

We do not consider the statements alluded to by the prosecution as voluntary statements. Appellant had testified as to his instructions to Drury, as chairman of the board of directors, to get the proper resolution passed and place the proceeds of the note to appellant's credit. By a proper resolution evidently was meant the resolution required by the statute. Prior to 1917, when this statute was enacted, no resolution was required. Appellant had been an officer of the bank referred to both before and after the enactment of the statute, continuously. What respondent refers to as voluntary statements of the witness occurred as follows on cross-examination:

"Q. Have you told us all you told Mr. Drury? A. Yes. Q. What did you mean, Mr. Larson, by having this note attended to in the regular way when you told Mr. Drury to take care of it in the regular way? A. Why I meant to have it put up to the majority of the board, and the proper entry made on the minutes."

Now, such answer, of course, referred to the requirements of the statute as to the passing of a resolution and entering it upon the minutes, but had nothing to do with the custom of appellant or the bank, or anyone else. The offense denounced by the statute involves no elements of intent, or *scienter*. The mak-

ing of any such loan, directly or indirectly, to any director, officer, etc., without a resolution authorizing the same, and approved by the majority of the directors at a meeting at which such director, officer or employee to whom the loan was to be made shall not be present, and which resolution shall be entered in the corporate minutes, is the offense.

It is true, and respondent cites many of our own cases and cases from other jurisdictions to the effect that in offenses involving intent, or fraud, or motive, other offenses of like character may be shown in order to prove intent. But the converse is equally true, that where intent or motive is not of the essence of the offense, other offenses of like character cannot be shown, with some well known exceptions. In *State v. Bokien*, 14 Wash. 403, 44 Pac. 889, a case which has been many times approved and reaffirmed by us, which was a prosecution for obtaining goods under false pretenses by the giving of a check upon a bank in which the defendant had no funds, it was held error to allow the prosecution to introduce evidence of other checks having been given by the defendant to other persons when he had no funds on deposit. In discussing that proposition, the court said:

"The evidence was not competent to prove the intent of the defendant in the particular transaction mentioned in the information, for the reason that it would not logically or legitimately follow that he intended to defraud Sharick because he had defrauded other parties at various times previously. It was not competent for the purpose of showing defendant's motive, for that, as well as his intent, would be inferred from his acts. The question of mistake was not involved in the case, and the previous transactions of the defendant, which were permitted to be shown, no more formed a part of a single scheme than the several larcenies of a thief; and it certainly would not be com-

petent in order to show that one had stolen certain property to prove that he committed larceny at a previous time.''

Respondent admits that it could not have introduced independent evidence in chief to the effect that appellant had, on other occasions than the one mentioned in the indictment, made loans from the bank, of which he was an officer, without the authorizing resolution; but respondent attempts to justify the wringing of this testimony from appellant on cross-examination, as heretofore stated, and further, that it became an issue because appellant had attempted to justify himself by testifying that he had left the matter with Drury, with instructions to procure the required statutory resolution and then have the proceeds passed to his credit. It was utterly immaterial to this prosecution whether appellant had made previous loans from the bank, or, if so, the course of procedure followed in making the same. The sole question to be determined in this case was whether or not he had obtained the loan here involved, directly or indirectly, in a manner forbidden by statute. No system or scheme of his or of the bank was relevant or proper to show whether he did or did not commit the offense charged. Nevertheless, the compulsion of such testimony from appellant on the part of the state must necessarily have been prejudicial, and in this case he defended upon the ground that he attempted to and supposed that the requirements of the statute would be complied with through the chairman of the board of directors, and under the statute he could not be present at the meeting at which it should be authorized. The borrowing could not legally be consummated until that authorizing resolution had been passed and entered on the minutes. But any other borrowing at any time, and any method

or system that he or the bank adopted, was purely collateral, and in such a prosecution as this, irrelevant and incompetent. We analyzed the cases where other offenses might be shown in prosecutions in *State v. Smith,* 103 Wash. 267, 174 Pac. 9, where we said:

"To establish guilty intent, unlawful motive, or criminal knowledge, it is permissible to show that the act charged against the defendant was one in a series of similar ones; but beyond this, the state cannot go and, for the purpose of securing a conviction, show the perpetration of other similar acts, even though committed in furtherance of a general scheme, where there is no proof required to establish intent, motive or knowledge, other than proof of the act charged itself. In other words, where the act charged against the defendant itself characterizes the offense, the guilty intent is proven by proving the act."

See the cases cited in the above decision upon this question. We are therefore firmly convinced that the cross-examination was improper and highly prejudicial to appellant. While there was ample evidence, if the jury disbelieved appellant as to the manner in which this loan was made, and believed the testimony of the other witnesses for the state, including that of Drury, the chairman of the board of directors, upon which to convict under this statute of the offense charged, yet accused persons are entitled to be tried according to the forms of law, and not to have their constitutional rights invaded. We are unable to say what the jury would have done had this prejudicial testimony as to other loans not been before it. It might have believed either one as between Drury and appellant. At any rate, the constitutional rights of appellant were plainly invaded and he was compelled to give evidence tending to incriminate him.

Another error claimed by appellant is in the sentence of the court to serve a term in the state peni-

tentiary, appellant contending that he could not be sentenced for anything more than a misdemeanor.

We are unable to find any basis for this contention whatever. The statute creating the crime makes it a felony, and other statutes provide penalties in such cases.

For the errors as to improper cross-examination of appellant, the judgment must be and is reversed, and the cause remanded for a new trial.

PARKER, C. J., BRIDGES, HOVEY, and MAIN, JJ., concur.