[No. 59910-6. En Banc. December 9, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. EARIC MCGEE, *Petitioner*.

*Lorraine Lee* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Michael J. Lang, Deputy,* for respondent.

*Gene M. Grantham* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

DOLLIVER, J. — Defendant McGee appeals the 24-month sentence enhancement imposed by the trial court pursuant to RCW 9.94A.310(5), which provides:

> An additional twenty-four months shall be added to the presumptive sentence for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435.

At the time of the offense here at issue, RCW 69.50.435(a) provided:

> Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under that subsection to a person in a school . . . or within one thousand feet of the perimeter of the school grounds is punishable by a fine of up to twice the fine otherwise authorized . . . or by imprisonment of up to twice the imprisonment otherwise authorized . . . or by both such fine and imprisonment.

Both the trial court and the Court of Appeals ruled RCW 69.50.435(a) does not require the State to prove the intended delivery site was within 1,000 feet of a school. We affirm.

In May 1990, police arrested McGee in a parking lot adjacent to the China Express Restaurant in Seattle. Just prior to the arrest, police observed three separate transactions in which McGee exchanged white objects for cash. During a search incident to the arrest, police discovered in McGee's possession a pill bottle containing 7.7 grams of rock cocaine and $91 in currency.

At trial, McGee testified he had purchased the cocaine 2 days before his arrest, using money he and three friends had pooled together. McGee denied selling any of the cocaine to other people, insisting he merely intended to give his friends their shares (presumably at a location outside the school zone). The jury found McGee guilty of possession with intent to deliver a controlled substance in violation of RCW 69.50-.401(a). In addition, the jury found McGee was within 1,000 feet of three different schools at the time of the offense.

The trial court assigned McGee an offender score of 1, and calculated the presumptive range, including the schoolyard

penalty, as 50 to 58 months. The trial court sentenced Mc-Gee to 40 months' total confinement, to run concurrently with a second sentence for possession of a controlled substance. The State did not challenge the trial court's imposition of an exceptionally low sentence.

McGee appealed his conviction, raising evidentiary issues and an ineffective assistance of counsel claim, and challenging the trial court's interpretation of RCW 69.50.435(a). In an unpublished decision, the Court of Appeals affirmed both the conviction and the sentence enhancement. In his petition for review, McGee presented only the issue related to the proper interpretation of RCW 69.50.435(a). We granted permission to the Washington Association of Criminal Defense Lawyers (WACDL) to file a brief as amicus curiae.

McGee contends the wording of RCW 69.50.435(a) is ambiguous. According to McGee, the statute does not clearly indicate which terms the phrase "within one thousand feet of the perimeter of the school grounds" modifies. Omitting those words not directly relevant to this case, former RCW 69.50.435(a) reads:

> *Any person* who violates RCW 69.50.401(a) by . . . *possessing* with the intent to . . . *deliver* a controlled substance . . . *to a person* . . . within one thousand feet of the perimeter of the school grounds is punishable [by twice the otherwise authorized fine or imprisonment or both].

(Italics ours.) McGee argues the phrase "within one thousand feet" modifies either the verb "deliver" or the term "to a person". McGee bases this contention on the last antecedent rule, which states:

> Where no contrary intention appears in a statute, relative and qualifying words and phrases . . . refer to the last antecedent.

*Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985) (quoting *Davis v. Gibbs*, 39 Wn.2d 481, 483, 236 P.2d 545 (1951)).

The State, on the other hand, asserts the phrase "within one thousand feet" modifies the two initial words of the statute: "Any person". The State contends RCW 69.50.435(a)

targets certain behavior, and thus, the proper antecedent of the phrase "within one thousand feet" is the subject of the sentence, *i.e.*, "any person", and not the object, *i.e.*, "to a person".

With respect to the analogous federal statute, 21 U.S.C. § 860 (formerly section 845a(a)), which provides an enhanced penalty for:

> Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a . . . school . . . .

(*see* 21 U.S.C.A. § 860 (Supp. 1993)) three federal circuit courts have determined the verb "possessing" serves as the antecedent for the phrase "within one thousand feet". *United States v. McDonald*, 991 F.2d 866 (D.C. Cir. 1993); *United States v. Rodriguez*, 961 F.2d 1089 (3d Cir. 1992); *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 119 L. Ed. 2d 569, 112 S. Ct. 2944 (1992).

McGee contends, because RCW 69.50.435(a) is subject to differing interpretations, the statute is ambiguous, and thus, the rule of lenity applies. Under the rule of lenity, the court must adopt the interpretation most favorable to the criminal defendant. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991). According to McGee, RCW 69.50.435(a) therefore must be read to require the State to prove the intended delivery site was within the school zone.

We disagree. A statute is ambiguous if it is subject to two or more reasonable interpretations. *See State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986); *cf. McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992) (in the insurance context, defining "ambiguous" as "fairly susceptible to two different interpretations, both of which are reasonable"). We can discern only one reasonable interpretation of the language at issue. We find McGee's alternative constructions unreasonable and therefore conclude RCW 69.50.435(a) is not ambiguous. As a result, we need not apply the rule of lenity.

■ RCW 69.50.435(a) mandates an enhanced penalty for "[a]ny person who violates RCW 69.50.401(a) . . . within one thousand feet of the perimeter of the school grounds". This reading omits the interim phrase "by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under that subsection to a person". The preposition "by", which begins the omitted phrase, indicates the succeeding enumerated actions merely constitute the manner in which RCW 69.50-.401(a) may be violated. *See Webster's Third New International Dictionary* 307 (1971) (defining "by" as "through the means or instrumentality of"). Thus, the omitted phrase lacks independent significance.

RCW 69.50.435(a) does not itself criminalize manufacturing, delivering, or possessing a controlled substance; it merely imposes an additional penalty for violating RCW 69.50.401(a) within a school zone. Hence, we conclude the phrase "within one thousand feet of the perimeter of the school grounds" modifies the term "violates RCW 69.50.401(a)". *See Commonwealth v. Roucoulet*, 413 Mass. 647, 601 N.E.2d 470 (1992); *State v. Ivory*, 124 N.J. 582, 592 A.2d 205 (1991). RCW 69.50-.401(a) does not require an intent to deliver within a particular area, only an intent to deliver. We therefore hold RCW 69.50.435(a) does not require the State to prove the intended delivery site was within 1,000 feet of the perimeter of a school ground.

■ We find McGee's alternative interpretations unreasonable. McGee's contention the phrase "within one thousand feet" modifies the infinitive verb "to deliver" lacks merit because it ignores the other verbs in the sentence, *i.e.*, manufacturing, selling, and delivering, thereby rendering the entire provision meaningless. As one commentator explains:

> The [last antecedent] rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections,

the word or phrase will not be restricted to its immediate antecedent.

(Footnote omitted.) 2A N. Singer, *Statutory Construction* § 47.33, at 270 (5th ed. 1992).

■ McGee's argument the phrase "within one thousand feet" modifies the phrase "to a person" is likewise flawed. McGee relies on *State v. Wimbs*, 68 Wn. App. 673, 847 P.2d 8 (1993), in which Division Three held RCW 69.50.435(a) requires proof the intended situs of the prospective drug purchaser was within the protected school zone. *Wimbs*, 68 Wn. App. at 679. The *Wimbs* court reasoned:

> [A]s the State points out, RCW 69.50.435 is susceptible to more than one interpretation because to require proof of "manufacture to a person" would be absurd. . . . The phrase "to a person" is meaningful and not superfluous only if it is included in the phrase "possessing with intent to . . . deliver . . . to a person". Consistent with the last antecedent rule, . . . the phrase "possessing with intent to . . . deliver . . . to a person" is qualified by the phrase "within one thousand feet of the perimeter of the school grounds". The latter phrase also refers to manufacturing or selling or delivering.

(Citations omitted.) *Wimbs*, 68 Wn. App. at 678. We find Division Three's conclusion the phrase "within one thousand feet" modifies the term "to a person" as well as the verbs "manufacturing or selling or delivering" internally inconsistent. If "within one thousand feet" modifies the verbs manufacturing, selling, and delivering, consistency dictates that the modifier also apply to the verb "possessing", and not to the object "to a person". The rule of lenity does not require us to reject an "available and sensible" interpretation in favor of a "fanciful or perverse" one, and we decline to do so. *See Commonwealth v. Tata*, 28 Mass. App. Ct. 23, 25-26, 545 N.E.2d 1179 (1989), *review denied*, 406 Mass. 1103 (1990).

McGee also argues RCW 69.50.435 distinguishes between the mere presence of drugs and drug transactions within the school zone, intending to impose the 24-month sentence enhancement for the latter, but not the former. *Cf. United States v. Roberts*, 735 F. Supp. 537 (S.D.N.Y. 1990). To the

extent a distinction may exist, it does not support McGee's position. With respect to possession with intent to deliver, we read RCW 69.50.435(a) as focusing on the quantity of controlled substance possessed, not the location of subsequent distribution. *Cf. Wake,* 948 F.2d at 1432. In that event, although a transaction has not yet occurred, the quantity of substance suggests a transaction will transpire shortly, and within the school zone. McGee's contention lacks merit because it fails to understand the distinction between possession with intent to deliver and mere possession.

■ We conclude our interpretation of RCW 69.50.435(a) is more consistent with the legislative purpose. RCW 69.50.435 is part of the omnibus alcohol and controlled substances act, Laws of 1989, ch. 271, p. 1266. Throughout the omnibus act, the Legislature discusses the detrimental impact of drugs on our children, our schools, and our community. Laws of 1989, ch. 271, §§ 201, 211, 244, pp. 1289, 1298, 1312. In recognition of the concomitant crimes and the risk of harm associated with large quantities of controlled substances, the Legislature implemented the drug-free zones at issue. *See also Rodriguez,* 961 F.2d at 1094; *Wake,* 948 F.2d at 1433. Our interpretation advances the legislative purpose by discouraging possession of more than personal use amounts within the school zone, thereby decreasing the likelihood of violence and the risk drugs will find their way into the hands of minors.

Affirmed.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, and GUY, JJ., concur.

BRACHTENBACH, J. (concurring) — I concur entirely with the majority, but write separately to disagree with the dissent on two points.

First, the dissent would hold that because the statute in question has been interpreted one way by one division of the Court of Appeals and another way by another division, and

because there is conflict in the federal circuit courts on an analogous statute, there is ambiguity in the statute involved herein. The dissent would hold that this division between lower courts is *determinative* of the existence of ambiguity. Dissent, at 797. Therefore, the rule of lenity would automatically apply in every such instance.

The dissent's notion of this court's function is wrong and contrary to our cases. Interestingly, the dissent cites no authority for its erroneous statement of law.

*This* court has the ultimate duty and authority to determine whether a statute is ambiguous.

On matters of statutory interpretation, the *ultimate authority* to determine the meaning and purpose of the statute *is vested in this court*. Because the interpretation of a statute is a question of law, *our review is de novo*. Accordingly, we interpret [the statute] independently of the trial court's interpretation.

(Citations omitted. Italics mine.) *Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990). *Accord, State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

The dissent's proposed rule would abdicate this court's authority and responsibility. The reason for outright rejection of the dissent's unsupported rule was well stated by Justice Marshall: "Nor have we deemed a division of judicial authority automatically sufficient to trigger lenity. If that were sufficient, one court's unduly narrow reading of a criminal statute would become binding on all other courts, including this one." (Citation omitted.) *Moskal v. United States*, 498 U.S. 103, 108, 112 L. Ed. 2d 449, 111 S. Ct. 461 (1990).

Thus, the dissent's proposal that a division in the lower courts is automatically *determinative* of ambiguity and therefore binding on this court is patently wrong. It is not supported by *any* authority. It is contrary to all the holdings of this court; those holdings are consistent with our constitutional authority and duty. No principled reasoning supports the dissent's proposal. The reasons advanced in *Moskal* demonstrate why the dissent's theory is wildly illogical.

Second, I turn to the dissent's automatic invocation of the rule of lenity as though it were an absolute command to be invoked for the benefit of the defendant anytime the defendant offers a "reasonable" interpretation different from that advanced by the State.

Before delving into the rule of lenity, I must point out a statement quoted by the dissent which is an unfounded theory. The dissent quotes from a student note as follows: "separation of powers cannot be preserved unless judges are prevented from construing statutory mandates liberally." Dissent, at 800. Neither the dissent nor the student author appreciates why separation of powers is relevant in construing statutes. The point is rather simple. Regardless of the label — liberal or strict — the judiciary cannot interpret a statute so as to create either a crime or a punishment which is not within the statutory language. The theory that liberally construing a statute violates the doctrine of separation of powers has been labeled "clearly unsound". Note, *Strict or Liberal Construction of Penal Statutes*, 48 Harv. L. Rev. 748, 757 (1934-1935). Indeed, our Legislature has mandated a liberal construction of the alcohol beverage control act, RCW Title 66, including its penal provisions, RCW 66.44. The dissent cites *no* case that has ever held such legislative direction violates the separation of powers doctrine.

This court, like many others, has invoked the rule of lenity without any examination of its history, purpose and limitations. The Harvard Law Review note, cited above, provides an excellent discussion of its origin in the "unmitigated severity", often death, of punishment of numerous crimes in the 16th century. 48 Harv. L. Rev. at 749-51.

However, "[a]pplications of the early common-law rule of strict construction produced numerous examples of legislative frustration in the field of criminal law. *Consequently, the legislatures of many states have abrogated or modified the rule*." (Italics mine.) 3 N. Singer, *Statutory Construction* § 59.07, at 136 (5th ed. 1992).

Washington is among those states which have modified the rule. In 1909 the Legislature enacted its Criminal Code

and provided: "Every provision of this act shall be construed according to the fair import of its terms." Laws of 1909, ch. 249, § 46, p. 902. In 1975 the Legislature extensively revised the Criminal Code, but was even more explicit in modifying the common law rule. RCW 9A.04.020(2) provides:

> The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title.

N. Singer goes so far as to state that a similar provision *abrogates* the common law rule of strict construction. "One type of statute specifically abrogates the common-law rules of strict construction of penal statutes and provides, instead, that all penal statutes 'are to be construed according to the fair import of their terms, with a view to effect their objects and to promote justice.'" 3 N. Singer § 59.07, at 136.

The Oregon court has recognized the proper application of such a statute. In *State v. Moore*, 192 Or. 39, 46, 233 P.2d 253, 256 (1951), it held:

> Section 23-106, O.C.L.A., relieves us from applying the common law rule of strict construction to penal statutes and substitutes instead the duty to construe them "according to the fair import of their terms, with a view to effect its objects and to promote justice." A search for the fair import comprehends a reasonable and sensible construction. . . .

*Moore*, at 46.

I find no Washington case which analyzes the meaning of RCW 9A.04.020(2) in relation to the rule of lenity. The statute has a purpose and this court should no longer ignore its existence. I am not aware of a case where the issue has been briefed, but other courts have more fully explored the rule of lenity, quite apart from legislative modification or abrogation. Several are worth noting, rather than continuing with a robotic invocation whenever the court can discern some degree of ambiguity, however minor, in a penal statute.

There is merit in the following admonition: "The rule of lenity, like other canons of construction, extends no further than the functions it serves. It does not preclude the implementation of the criminal law every time a statute needs

construction, for all enactments require elucidation." *United States v. Palmer*, 864 F.2d 524, 527 (7th Cir. 1988).

N. Singer suggests that "the conclusion is warranted that they [the cases] evince a wide-spread sentiment that the historic rule of strict construction of penal statutes is no longer justified or desirable. Modern emphasis of the use of fair procedures to determine when an individual is subject to penal liability suggests that procedural safeguards may now be more suitable than the safeguard of strict construction to protect the interests of individuals." 3 N. Singer § 59.07, at 137.

The United States Supreme Court, in two recent decisions, the first written by Chief Justice Rehnquist and the second by the late Justice Marshall, has put into reasonable perspective the proper scope and application of the rule of lenity, quite apart from any statute abrogating or modifying the common law rule.

In *Chapman v. United States*, 500 U.S. 453, 463, 114 L. Ed. 2d 524, 537, 111 S. Ct. 1919 (1991), the Chief Justice explained:

> The rule of lenity, however, is not applicable unless there is a "grievous ambiguity or uncertainty in the language and structure of the Act," *Huddleston* v. *United States*, 415 U. S. 814, 831[, 39 L. Ed. 2d 782, 94 S. Ct. 1262 (1974)], such that even after a court has " 'seize[d] every thing from which aid can be derived,' " it is still "left with an ambiguous statute." *United States* v. *Bass*, 404 U. S. 336, 347[, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971) (quoting *United States* v. *Fisher*, 2 Cranch 358, 386[, 2 L. Ed. 304] (1805)). "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan* v. *United States*, 364 U. S. 587, 596[, 5 L. Ed. 2d 312, 81 S. Ct. 321] (1961).

Justice Marshall's opinion likewise makes clear that the rule of lenity is one carefully circumscribed.

> Because it is *possible* to read the statute as applying only to forged or counterfeited securities, and because *some* courts have so read it, Moskal suggests we should simply resolve the issue in his favor under the doctrine of lenity. . . .
> In our view, this argument misconstrues the doctrine. We have repeatedly "emphasized that the 'touchstone' of the rule

of lenity 'is statutory ambiguity.' " *Bifulco* v. *United States*, 447 U. S. 381, 387[, 65 L. Ed. 2d 205, 100 S. Ct. 2247] (1980), quoting *Lewis* v. *United States*, 445 U. S. 55, 65[, 63 L. Ed. 2d 198, 100 S. Ct. 915] (1980). Stated at this level of abstraction, of course, the rule

> "provides little more than atmospherics, since it leaves open the crucial question — almost invariably present — of *how much* ambiguousness constitutes . . . ambiguity." *United States* v. *Hansen*, 249 U. S. App. D. C. 22, 30, 772 F. 2d 940, 948 (1985) (Scalia, J.) (emphasis added), cert. denied, 475 U. S. 1045[, 89 L. Ed. 2d 571, 106 S. Ct. 1262] (1986).

Because the meaning of language is inherently contextual, we have declined to deem a statute "ambiguous" for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the Government. See, *e. g.*, *McElroy* v. *United States*, 455 U. S. 642, 657-658[, 71 L. Ed. 2d 522, 102 S. Ct. 1332] (1982). Nor have we deemed a division of judicial authority automatically sufficient to trigger lenity. See, *e. g.*, *United States* v. *Rodgers*, 466 U. S. 475, 484[, 80 L. Ed. 2d 492, 104 S. Ct. 1942] (1984). . . . Instead, we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to "the language and structure, legislative history, and motivating policies" of the statute. *Bifulco* v. *United States*, *supra*, at 387 . . ..

(Citations omitted.) *Moskal v. United States*, 498 U.S. 103, 107-08, 112 L. Ed. 2d 449, 111 S. Ct. 461 (1990).

It must be noted that *Chapman v. United States*, *supra*, holds that the rule of lenity is *not* applicable unless there is a *grievous ambiguity or uncertainty* in the language and structure of the act.

On occasion we have declared a more reasonable view. In *State v. Carter*, 89 Wn.2d 236, 242, 570 P.2d 1218 (1977), this court held: "Strict construction does not mean that a forced, narrow or overstrict construction should be applied to defeat the intent of the legislature." *Accord*, *State v. Cann*, 92 Wn.2d 193, 197-98, 595 P.2d 912 (1979).

In *State v. Rinkes*, 49 Wn.2d 664, 306 P.2d 205 (1957), this court set out specific rules for construing penal statutes, including the following:

> Where an act has a doubtful or ambiguous meaning, it is the duty of the court to adopt a construction that is reasonably liberal, in furtherance of the obvious or manifest purpose of the legislature. . . .

> Penal statutes are to be construed strictly, to the end that offenses not entitled to be included shall not be prosecuted. But they are not to be construed so strictly that they would be defeated by a forced and over-strict construction. *State v. Larson*, 119 Wash. 123, 125, 204 Pac. 1041 (1922), and cases cited.
>
> Strict construction of a penal statute means merely that the punitive sanctions must be confined to such matters as are clearly and manifestly within the statutory terms and purposes. It does not mean that a forced, narrow, and over-strict construction should be applied to defeat the obvious intent of the legislature.

*Rinkes*, at 667.

In summary, the rule of lenity, in an appropriate case, should be reexamined and not applied, as we have and as the dissent urges, every time there is a possible alternative reading of a criminal statute, RCW 9A.04.020(2) must be considered. The history and purpose of the rule should be examined. At the least, we should avoid narrow or overstrict construction to defeat legislative intent. We should consider the manner in which the United States Supreme Court has employed the rule. In the future, defense counsel who claim the rule applies should address these multiple issues.

In any event, I repeat that the dissent is in dangerous error in how it finds ambiguity. No separation of powers issue is presented here, and finally the rule of lenity bears no consideration here under the solidly reasoned majority.

DURHAM, J., concurs with BRACHTENBACH, J.

JOHNSON, J. (dissenting) — I disagree with the majority's conclusion that RCW 69.50.435(a) is subject to only one reasonable interpretation. I would find the statute ambiguous and would apply well-settled rules of statutory construction to resolve the issues in this case. Because the majority fails to adhere these rules of construction, I must respectfully dissent.

This case involves a statute that is capable of and has been reasonably interpreted two ways. The first rule of construction ignored by the majority is that a statute is ambigu-

ous when it is susceptible to two or more reasonable interpretations. *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986). The majority, despite professing adherence to this rule, divines one possible meaning and pronounces the statute unambiguous. I disagree. The statute before us has been interpreted by two divisions of the Court of Appeals.[1] One division unanimously interpreted the statute one way; the other unanimously read it another. The analogous federal statute has been examined by several courts with the same split results.[2] I find this split determinative on the issue this statute can be interpreted two reasonable ways.

The violation at issue in this case is the enhanced penalty for "possessing with the intent to . . . deliver a controlled substance . . . to a person . . . within one thousand feet" of a school. RCW 69.50.435(a). The defendant contends the statute requires the State to prove the defendant possessed a controlled substance within a 1,000-foot radius of a school *and* intended to distribute the controlled substance to a person within the 1,000-foot radius. The majority holds the statute only requires the State to prove possession within a protected zone. The majority finds the defendant's interpretation unreasonable and so concludes there is no ambiguity.

---

[1]*State v. Wimbs*, 68 Wn. App. 673, 678, 847 P.2d 8 (1993) (concluding the additional penalty applied to possession with intent to deliver to a person within 1,000 feet of a schoolyard); *State v. McGee*, cause 27140-7-I (Sept. 28, 1992), slip op. at 7-8 (holding RCW 69.50.435(a) applies to all listed crimes committed within the prohibited area, regardless where the defendant intended the delivery to occur).

[2]*United States v. Watson*, 788 F. Supp. 22 (D.D.C. 1992); *United States v. Testa*, 768 F. Supp. 221 (N.D. Ill. 1991); *United States v. McDonald*, 777 F. Supp. 44 (D.D.C. 1991), *aff'd*, 991 F.2d 866 (D.C. Cir. 1993); *United States v. Coates*, 739 F. Supp. 146 (S.D.N.Y. 1990); *United States v. Roberts*, 735 F. Supp. 537 (S.D.N.Y. 1990); *United States v. Liranzo*, 729 F. Supp. 1012 (S.D.N.Y. 1990) (each finding the analogous federal statute requires the government to prove both possession and intent to distribute within the 1,000-foot zone); *United States v. Rodriguez*, 961 F.2d 1089 (3d Cir. 1992); *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991) (statute applies to defendants who possess drugs in the protected areas, regardless where the delivery is intended to occur), *cert. denied*, ___ U.S. ___, 119 L. Ed. 2d 569, 112 S. Ct. 2944 (1992).

The majority's analysis, however, articulates the reasons why the majority prefers its own interpretation of the statute, but fails to establish why the defendant's interpretation is unreasonable. I conclude the defendant's interpretation is equally reasonable and the statute is ambiguous.

The majority correctly notes RCW 69.50.435(a) is an enhanced penalty for violating RCW 69.50.401(a) within 1,000 feet of a school. Majority, at 788. Yet the majority fails to explain why the modifier "within one thousand feet of the perimeter of the school grounds" should not be applied to each element of each offense identified in RCW 69.50.401(a), including "to a person". RCW 69.50.401(a) requires the State to prove *both* possession and an intent to deliver. RCW 69.50-.435(a) may thus reasonably be read to require the State to prove *both* these elements took place in a protected school zone.

Under the majority's reading of RCW 69.50.435(a), defendants merely passing through a protected school zone on their way to a narcotics sale elsewhere are treated the same as those defendants intending to distribute the drugs within the protected zone. The defendant instead contends this statute distinguishes between drug possession and drug transactions within a protected school zone. I find the defendant's interpretation more reasonable. As a federal judge interpreting a similar statute correctly concluded, to charge an enhanced penalty every time a defendant passes through a protected zone on his way to a transaction elsewhere "stretches the scope of the statute beyond logical and acceptable bounds". *United States v. Coates*, 739 F. Supp. 146, 153 (S.D.N.Y. 1990).

Thus, because I find a substantial split of authority on this issue and because I find the defendant's interpretation of RCW 69.50.435(a) equally reasonable to the majority's, I would hold this statute is ambiguous.

Finding an ambiguity, I would next look to the legislative intent and attempt to give meaning to the statute in accord with that intent. *See In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993). However, if the statute con-

tains no ambiguity, as the majority contends, we must derive its meaning "from the language of the statute alone". *Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991) (citing *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988)). Here, again, the majority ignores the rules of statutory construction. Despite purporting to have found the unambiguous meaning of the statute, the majority turns to the legislative history of the omnibus alcohol and controlled substances act to support its holding. The majority explains, "[t]hroughout the omnibus act, the Legislature discusses the detrimental impact of drugs on our children, our schools, and our community", and concludes "[o]ur interpretation advances the legislative purpose by discouraging possession of more than personal use amounts within the school zone, thereby decreasing the likelihood of violence and the risk drugs will find their way into the hands of minors". Majority, at 790.

While this is a lofty goal, it suggests the majority misunderstands its role when it interprets a statute. Rather than attempting to give meaning to RCW 69.50.435(a) consistent with the Legislature's intent, as the rules of construction direct us to do, the majority provides us with an interpretation of the legislative history consistent with *the majority's* desired result. When we interpret a statute's legislative history, we must not only attempt to ascertain the Legislature's purpose in enacting the statute, but also its scope. Otherwise we risk extending the reach of the statute beyond that intended by the Legislature. Although the legislative history of the alcohol and controlled substances act indicates the Legislature is concerned with the harmful effects of drugs on our children, it does not eliminate the ambiguity at issue in this case. As I read the legislative history, it is just as likely that enhancing the penalty for *selling*, not possessing, drugs in a school zone is consistent with the purpose of RCW 69.50.435(a).

Faced with an ambiguity and finding no clear guidance from the Legislature, I would turn to one final rule of con-

struction ignored by the majority: the rule of lenity. The rule of lenity dictates we must construe a statute strictly against the State when we are faced with an ambiguous statute and we find no direction from the Legislature. *State v. Roberts*, 117 Wn.2d 576, 586-87, 817 P.2d 855 (1991); *State v. Gore*, 101 Wn.2d 481, 485-86, 681 P.2d 227, 39 A.L.R.4th 975 (1984). The rule of lenity is grounded in principles of separation of powers and due process. "Because the legislature, not the judiciary, has the power to enforce societal judgments through the penal law, separation of powers cannot be preserved unless judges are prevented from construing statutory mandates liberally." Note, *A Functional View of the Rule of Lenity: Does Theft of Misaddressed Mail Violate the Federal Mail Theft Statute?*, 58 Fordham L. Rev. 215, 220 (1989). Due process "requires that citizens be given fair notice of conduct forbidden by a penal statute", *State v. Brown*, 33 Wn. App. 843, 846, 658 P.2d 44, *review denied*, 99 Wn.2d 1012 (1983), and the rule of lenity prevents such statutes from trapping the innocent. Note, *supra* at 221.

In *Roberts* this court also faced an ambiguous sentencing provision. The only issue on appeal was whether, under RCW 9.94A.360(6)(c), sentences must begin and end on the same date to be "served concurrently". *Roberts*, 117 Wn.2d at 579. Because the statute provided no definition for the term "served concurrently", we found the statute ambiguous and turned to the legislative history to give meaning to the provision. *Roberts*, 117 Wn.2d at 584-85. Finding the legislative intent on this issue equally ambiguous, we applied the rule of lenity and adopted the interpretation of RCW 9.94A.360-(6)(c) most favorable to the defendant. *Roberts*, 117 Wn.2d at 586.

Here, the inherent ambiguity and lack of legislative guidance similarly dictates we apply the rule of lenity to arrive at the interpretation of the statute most favorable to this defendant. The reading of RCW 69.50.435(a) most favorable to the defendant in this case requires the State to prove the defendant intended to distribute the drugs within 1,000 feet

of the school. I find no evidence the State has met this burden.

For the foregoing reasons, I would reverse the defendant's sentence enhancement under RCW 69.50.435(a).

UTTER, SMITH, and MADSEN, JJ., concur with JOHNSON, J.