IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PEACEHEALTH ST. JOSEPH MEDICAL CENTER AND PEACEHEALTH ST. JOHN MEDICAL CENTER, | ) ) ) | No. 79648-8-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) ) ) | FILED: July 22, 2019 |
| Respondent. | ) ) | |

ANDRUS, J. — PeaceHealth St. Joseph Medical Center and St. John Medical Center[1] appeal a superior court determination that, under RCW 82.04.4311, they are not entitled to a business and occupation (B&O) tax refund for taxes paid on compensation received from non-Washington state Medicaid or Children's Health Insurance Programs (CHIP). Because the plain language of the statute unambiguously limits the B&O tax deduction to compensation received from Washington programs, we affirm.

## FACTS

PeaceHealth is a non-profit corporation that operates multiple medical facilities in Washington State, including St. Joseph Medical Center in Bellingham,

---

[1] For purposes of this opinion, the appellants are collectively referred to as "PeaceHealth."

St. John Medical Center in Longview, and Southwest Medical Center in Vancouver. Because some of its facilities are located near the Oregon border, PeaceHealth treats Oregon Medicaid and CHIP recipients. PeaceHealth paid B&O taxes on the compensation it received from Oregon's Medicaid and CHIP programs.

PeaceHealth sought a refund from the Department of Revenue (the Department) for the taxes it paid between December 1 and 31, 2008 under RCW 82.04.4311.[2] PeaceHealth argued that, as a non-profit hospital, any revenue it receives from any state's Medicaid and CHIP programs is tax-exempt. The Department's Audit Division denied PeaceHealth's refund request, reasoning that RCW 82.04.4311 limited the tax deduction to Medicaid and CHIP compensation authorized "under chapter 74.09 RCW," thus limiting the deduction to compensation received from Washington state Medicaid and CHIP programs.

PeaceHealth appealed to the Board of Tax Appeals. The Board agreed with PeaceHealth that RCW 82.04.4311 grants a B&O tax deduction for amounts received from any state's Medicaid and CHIP programs. The Department appealed to Thurston County Superior Court under RCW 82.03.180 and RCW 34.05.510. The trial court reversed the Board's decision, holding that the B&O tax deduction under RCW 82.04.4311 does not extend to other states' Medicaid or CHIP programs. PeaceHealth appeals the trial court's ruling.

---

[2] PeaceHealth also sought a refund of B&O tax on medical services provided to PeaceHealth employees, which the Department denied. PeaceHealth did not appeal this determination to the Board or to this court. The Department granted PeaceHealth's request for B&O tax refunds for services rendered under Washington Medicaid and CHIP.

- 2 -

ANALYSIS

This court reviews Board proceedings under the Administrative Procedure Act (APA), chapter 34.05 RCW. Steven Klein, Inc. v. State, Dep't of Revenue, 183 Wn.2d 889, 895, 357 P.3d 59 (2015). Under the APA, an agency's legal conclusions are reviewed de novo. Id. RCW 34.05.570(3)(d) provides that the court "shall grant relief from an agency order" if it determines that the agency has erroneously interpreted or applied the law.

At issue in this appeal is the Board's interpretation of RCW 82.04.4311. Statutory interpretation is an issue of law reviewed de novo. Spokane County v. Dep't of Fish & Wildlife, 192 Wn.2d 453, 457, 430 P.3d 655 (2018). We start with "the statute's plain language and ordinary meaning." Id. (internal quotation marks omitted) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). When the plain language is unambiguous, subject to only one reasonable interpretation, our inquiry ends. Id. at 458. We do not use interpretive tools such as legislative history when statutory language is unambiguous. Id.

A reviewing court must "accord substantial weight to an agency's interpretation of a statute within its expertise, and to an agency's interpretation of rules that the agency promulgated." Verizon NW, Inc. v. Emp't. Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). As the agency charged with assessing and collecting taxes, the Department is entitled to this deference. See RCW 82.01.060(1) (department of revenue assesses and collects all taxes); see also Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 595, 90 P.3d 659 (2004) (a reviewing court defers to the interpretation of the agency designated by

the Legislature to administer the statute, not to the interpretation of the quasi-judicial body interpreting the statute). This court thus gives no deference to either the Board's or the superior court's interpretation of RCW 82.04.4311. Verizon, 164 Wn.2d at 915.

RCW 82.04.411 reads:

(1) A public hospital . . . or a nonprofit hospital . . . may deduct from the measure of tax amounts received as compensation for health care services covered under the federal medicare program authorized under Title XVIII of the federal social security act; medical assistance, children's health, or other program under chapter 74.09 RCW; or for the state of Washington basic health plan under chapter 70.47 RCW . . . .

At issue here is the second clause of the statute, allowing a deduction for compensation for health care services covered under "medical assistance, children's health, or other program under chapter 74.09 RCW." PeaceHealth argues the statute grants a B&O tax deduction for all compensation a non-profit hospital receives from any state's Medicaid or CHIP programs. We disagree, based on basic rules of grammar and the overall structure of Washington's subsidized health programs within chapter 74.09 RCW.

PeaceHealth first argues that under the last antecedent rule, the phrase "under chapter 74.09 RCW" modifies only the preceding words "other programs," and cannot be read to modify "medical assistance," or "children's health." Courts employ traditional rules of grammar in discerning the plain language of a statute. State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). One of those rules is known as the last antecedent rule, under which "qualifying or modifying words and phrases refer to the last antecedent." Id. Related to this rule is the corollary

-4-

principle that the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one. City of Spokane v. County of Spokane, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). In this case, PeaceHealth correctly points out that the Legislature did not insert a comma before the phrase "under chapter 74.09 RCW."

The last antecedent rule, however, is "not inflexible and uniformly binding." State v. McGee, 122 Wn.2d 783, 788, 864 P.2d 912 (1993). Structural or contextual evidence may rebut the last antecedent inference. Lockhart v. United States, __ U.S. __, 136 S. Ct. 958, 960, 194 L. Ed. 2d 48 (2016) (quoting Jama v. Imm. & Customs Enforcement, 543 U.S. 335, n.4, 124 S. Ct. 694, 160 L. Ed. 2d 708 (2005)).

Under the "series-qualifier" rule of grammar, there is a presumption that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." BLACK'S LAW DICTIONARY (10th ed. 2014). This rule applies when two textual signals are present: first, when the modifying phrase makes sense with all items in the series; and second, when the modifying clause appears at the end of a single, integrated list. Lockhart, 136 S. Ct. at 965.

First, the modifier makes sense when we apply it to all of the items in the statutory series. RCW 74.09.010(14) defines "medical assistance" as "the federal aid medical care program provided to categorically needy persons as defined under Title XIX of the federal social security act."[3] RCW 74.09.010(14). RCW

---

[3] Title XIX of the Social Security Act establishes Medicaid, which enables participating states to receive federal funding to establish state programs for medical assistance for low-income

74.09.010(3) defines "children's health program" as "the health care services program provided to children under eighteen years of age and in households with incomes at or below the federal poverty level . . . and who are not otherwise eligible for medical assistance."[4] Washington's Medicaid program was established in RCW 74.09.510 and its CHIP program was established in RCW 74.09.470. Both of these programs arise "under chapter 74.09 RCW." The modifier makes sense when applied to each of the items in the statutory series.

Second, the modifier appears at the end of a single, integrated list. Chapter 74.09 established several state health services programs, in addition to Medicaid and CHIP. See e.g. RCW 74.09.655 (coverage for smoking cessation programs); RCW 74.09.715 (dental care to seniors and adults who are categorically needy, blind, or disabled); and RCW 74.09.770 (maternity care for low-income women).[5] The catchall phrase "or other program" makes sense contextually in light of the other programs included by the Legislature within the same chapter. See also Paroline v. United States, 572 U.S. 434, 447, 134 S. Ct. 1710, 188 L. Ed .2d 714 (2014) (the catchall clause "any other loss" is "read as bringing within a statute categories similar in type to those specifically enumerated").

---

individuals and children. 42 U.S.C. § 1396-1. A state is eligible for federal funding if it complies with federal guidelines. 42 U.S.C. § 1396a. In Washington, the state agency that administers the Medicaid program is the Washington State Health Care Authority (HCA). RCW 41.05.021; WAC 182-02-045.

[4] The Children's Health Insurance Program (CHIP) enables participating states to receive federal funding to establish state programs to expand child health assistance to uninsured, low-income children. 42 U.S.C. § 1397aa. The HCA administers CHIP. RCW 41.05.021. In Washington, CHIP is called "Apple Health for Kids." WAC 182-500-0010 ("'Apple health for kids' is the umbrella term for health care coverage for certain groups of children that is funded by the state and federal governments under Title XIX medicaid programs, Title XXI Children's Health Insurance Program, or solely through state funds.")

[5] Together, these programs comprise Washington Apple Health. WAC 182-500-0120. The HCA administers all of chapter 74.09 RCW programs. See RCW 41.05.006 (creating the HCA); RCW 74.09.010(1) (defining "authority" as referred to in chapter 74.09 as the HCA).

Under the series-qualifier rule, the language would be naturally read as:

medical assistance [program under chapter 74.09 RCW], children's health [program under chapter 74.09 RCW], or other program under chapter 74.09 RCW.

The fact that the Legislature combined different programs, all authorized by the same chapter, in the same clause in a straightforward and parallel construction makes the series-qualifier rule much more reasonable than the last antecedent rule.

Finally, the Legislature used semicolons to divide the tax deduction statute into three categories of qualifying government programs: (1) the Medicare program "under Title XVIII of the federal social security act;" (2) medical assistance, children's health, or other program "under chapter 74.09 RCW;" and (3) Washington's Basic Health Plan "under chapter 70.47 RCW." The parallelism[6] created by these three clauses also demonstrates that the Legislature intended "medical assistance, children's health, or other program" to form a single category of programs modified by the phrase "under chapter 74.09 RCW," therefore limiting the deduction to revenue received from Washington state programs only.

PeaceHealth essentially advances an interpretation of the tax deduction statute to cover compensation from <u>any</u> medical assistance program, <u>any</u> children's health program, <u>and any</u> program under chapter 74.09 RCW. The Legislature did not choose this formulation. The context and structure of the

---

[6] "Every element of a parallel series must be a functional match (word, phrase, clause, sentence) and serve the same grammatical function in the sentence (e.g., noun, verb, adjective, adverb)." CHICAGO MANUAL OF STYLE § 5.242.

provision evidences a legislative intent to keep the deduction limited to a much narrower category of subsidized health care programs.

Finally, we reject PeaceHealth's contention that our reading of the statute raises dormant Commerce Clause concerns. States may not discriminate against or burden the interstate flow of articles of commerce. Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or., 511 U.S. 93, 98, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (1994). If a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose. Tennessee Wine & Spirits Retailers Ass'n v. Thomas, 588 U.S. __, 139 S. Ct. 2449, 2462 (2019).

But a law that favors local government is not susceptible to standard dormant Commerce Clause scrutiny when the motivation for the law is based on legitimate government goals unrelated to economic protectionism. See United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 342, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007) (ordinance requiring trash haulers to deliver solid waste only to processing plant owned and operated by New York state justified by government interest in protecting health, safety and welfare of its citizens).

Additionally, when states are not mere regulators, but are also economic actors and participate in the marketplace, any decisions they make as a market participant, rather than a market regulator, are exempted from the dormant Commerce Clause. Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 339, 128 S. Ct. 1801, 170 L. Ed. 2d 685 (2008) (Kentucky taxation structure exempting

interest income from in-state and local bonds but taxed interest on out-of-state bonds did not violate dormant Commerce Clause).

In this case, the B&O tax exemption assists nonprofit hospitals serving indigent Washington residents, a law that ultimately benefits the state finances because it is the state that procures and ultimately pays for these services. Using tax laws that favor programs for in-state residents is not impermissible economic protectionism. Washington may adopt tax laws to support its efforts to provide health care to the elderly, disabled or indigent who reside in this state without infringing on the dormant Commerce Clause. We therefore reject PeaceHealth's Commerce Clause challenge to the statute.[7]

We conclude that the plain language of RCW 82.04.4311 limits the B&O tax deduction to compensation PeaceHealth receives from Washington Medicaid and CHIP programs and does not extend to compensation it receives from other states' subsidized health programs.

Affirmed.

WE CONCUR:

_____        _____ Andrus, J.

_____        _____

---

[7] The U.S. Supreme Court's most recent decision on the dormant Commerce Clause, Tennessee Wine & Spirits, invalidated a state statute imposing a durational residency requirement on any person or corporation seeking to obtain or renew a license to operate a liquor store. 139 S. Ct. at 2456. The Tennessee statute in that case is not analogous to the B&O tax exemption statute at issue here because it did not involve the state provision of traditional government services, like health care, or methods to encourage taxpaying providers to deliver those services.